[No. 10200. Department One. September 14, 1912.]

ADAM P. KISER et al., Appellants, v. DOUGLAS COUNTY, Respondent.[1]

COUNTIES—ACTIONS—CONDITIONS PRECEDENT—CLAIMS—NECESSITY. Rem. & Bal. Code, § 3918, requiring claims against a county to be presented to the county commissioners for allowance before any action can be brought thereon has no application to an equitable suit to restrain the county from interfering with or diverting the flow of springs claimed by the plaintiff.

WATERS AND WATER COURSES—SPRINGS—PRESCRIPTION—RIGHTS OF PUBLIC—COUNTIES—HIGHWAYS. Springs which were originally open to appropriation may become the subject of a prescriptive right acquired by the public for a watering trough in the highway through adverse use for the statutory period.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered February 21, 1910, upon sustaining a demurrer to the complaint, dismissing an action to restrain interference with certain springs, and to quiet title thereto. Reversed.

W. A. Reneau, for appellants.

John W. Hanna, Arthur McGuire, and Thomas & Hannan, for respondent.

CHADWICK, J.—Plaintiffs brought this action to restrain Douglas county from interrupting the flow of certain springs located in a highway which traverses their lands, and to quiet

[1]Reported in 126 Pac. 622.

title thereto. Plaintiffs had developed the springs, gathered the waters, and conducted them to a reservoir, from which they drew water for domestic uses and for irrigation. The county answered, admitting that it had interrupted the flow, and set up as an affirmative defense that it had, more than ten years theretofore, developed the springs, and had gathered the waters and conducted a part thererf to a watering trough which it had maintained for the benefit, accommodation, and convenience of the traveling public. Plaintiffs interposed a motion for judgment on the pleadings. This the court treated as a demurrer to the answer, and invoking the rule that a demurrer searches the record and attaches to the first defective pleading, held that the complaint did not state facts sufficient to constitute a cause of action, for the reason that it nowhere appeared that a demand had been presented to the board of county commissioners for allowance or rejection prior to the commencement of the action. Plaintiffs have appealed, and a large part of their argument goes to the office of a motion for judgment on the pleadings, and to the manner in which the motion in this case was treated by the court. This question is not now material, and we shall not discuss it.

It is first contended that, inasmuch as the county did not demur or raise the issue by way of answer, it has waived a demand. The court, in ruling against the sufficiency of the complaint, based its judgment entirely upon *Hoexter v. Judson*, 21 Wash. 646, 59 Pac. 498, and *Rose v. Pierce County*, 25 Wash. 119, 64 Pac. 913. In justice to the trial judge, we feel bound to say that the language of the court in those cases is broad enough to sustain his ruling. But a re-examination of them convinces us that the facts on which the rulings of the court were based would not sustain a holding that a claim or demand of a purely equitable nature and upon which a prayer for a restraining order is based requires presentation under our statute.

There has been great controversy and a resultant division

of authority as to whether claim statutes apply to actions of tort as well as contract. This court has held, in *Barto v. Stewart,* 21 Wash. 605, 59 Pac. 480, that the word "claim" is synonymous with the term "cause of action." In other cases, *Postel v. Seattle,* 41 Wash. 432, 83 Pac. 1025, and *Jurey v. Seattle,* 50 Wash. 272, 92 Pac. 107, it is said that like statutes are broad enough to cover a demand of every kind or nature. In all of the cases decided by this court, however, the facts were such that they would or might result in a money judgment. Under the probate statute of non-claim, this court, with almost all others, has held that a mortgage may be foreclosed without presentation of claim, the remedy being in equity and no personal judgment being sought. In this case the question for presentation to the board was not alone that of legal liability for past trespasses, but to restrain its future conduct and to quiet title to property the fee of which is in the plaintiffs. We think an entirely different rule prevails where an action is brought to restrain a threatened injury, or to quiet title to property claimed by the moving party. The statute, Rem. & Bal. Code, § 3918, seems to imply that only such claims, demands, and accounts as are capable of being audited, and upon which warrants may be drawn, come within its comprehension. If the construction put upon the statute by the lower court is to be taken as the proper one, it would follow that, in all cases where a claim for equitable relief existed, the party aggrieved would be obliged to suffer a threatened injury or invasion of property right before he could obtain redress or relief; for it is a matter of common knowledge that, in most of the counties of the state, the commissioners seldom meet oftener than once in each month, and sometimes at less frequent intervals. It was never the intention of the legislature to deny remedies for an actual wrong; the only purpose of the statute being to insure opportunity to settle and compromise claims that might be reduced to money judgments, and to save the cost of an action.

"Such charter or statutory provisions, so far as the requirement of a notice or presentment as a condition precedent is concerned, are in derogation of common right, and should be strictly construed, and cannot be extended by implication beyond their own terms . . . It has been held that the requirement of a prescribed notice or presentation does not apply where the injury is caused by a nuisance; nor to a suit in equity for relief from continued wrongful acts in the nature of a trespass, although there is also involved a demand for damages in the past; . . ." 28 Cyc. 1450.

In *Sammons v. Gloversville,* 175 N. Y. 346, 67 N. E. 622, it was held that a statute similar to our own had no application to a suit on the equity side of the court. In that case the gravamen of the action was a continued trespass. Upon the authority of that decision it was held, in *Gerow v. Liberty,* 106 App. Div. 357, 94 N. Y. Supp. 949, that the statute had no application where the action was brought to restrain a nuisance. In that case the demand was for an order restraining the flow of waste sewage, and incidental damage. See, also, *Bowie County v. Powell* (Tex. Civ. App.), 66 S. W. 237. We, therefore, hold that the complaint was sufficient.

The merits are argued in the briefs, and inasmuch as the case is to go back for retrial, we shall pass upon the law of the case. Originally, that is before the land owned by appellant became the subject of private ownership, the waters of the springs now in controversy were open to appropriation. They were not incident to the political subdivision of land upon which they were situate, and they might have been lawfully appropriated by a settler upon other land, and conveyed by him and appropriated to his own use. This being the legal status of the waters in controversy, we think they might well become the subject of prescriptive right, the real question in the case being whether such right can be acquired by the public. The case is difficult. But, reasoning from the fundamental principles applicable to the rights of the general public, it can be settled. In the case of *Smith*

*v. Archibald*, 5 Appeal Cases 489, the right of the public to the waters of a well, alleged to be public, was considered by the House of Lords and Privy Council, and while the public right might have been maintained by reference to what is known as the public health act, the right was recognized irrespective of the act. In *Dungarvan Guardians v. Mansfield*, 1 Ir. 420, it is made plain that the public health act only enacted that the sanitary authorities might cause all public wells used for the gratuitous supply of water to the inhabitants of a community to be continued, maintained, and plentifully supplied with water; in other words, that it did not make that common which had hitherto been private; it did not create, but provided for the regulation and maintenance of that which was.

In the last case cited, the well was situate on the defendant's land, at a short distance from the public road. There had been a village about the well, and its waters had been freely used by its inhabitants. Defendant partly inclosed the ground upon which the well was situate, leaving an open passage from the public road down to the well. Finally, he built a wall, which completely inclosed the well, so as to shut out the public from access thereto. Upon demand, he refused to restore the well to its former condition. His principal defense was that "the well and the land upon which the same is situate is exclusive property, and that no public right of access to the well or right of public user of the water had existed." In its opinion the court found it unnecessary to consider whether the soil and freehold of the well passed to the plaintiff, for it said that, in either case, the right, whatever it was, was in the public, and that it had been wrongfully interrupted in that right by the defendant.

Recurring now to the case of *Smith v. Archibald, supra,* the prescriptive right of the public to patronize public wells is recognized and clearly discussed by Lord Blackburn. He states that the right contended for by the public authorities could have been, admittedly, acquired by an individual, and

that out of this might come what he calls "an aggregate of these individual rights," making the maintenance of the well thus subject to public control. In *Holmfirth Local Board v. Shore,* 59 J. P. 344, a trough or cistern received the overflow from a spring at some distance from the highway, and had been used by the public gratuitously for watering cattle and for domestic purposes for a period of over fifty years. The defendant, the owner of the abutting land, erected a gate to prevent the access of cattle to the trough, and let a pipe into the bottom of the trough leading into his own house. It was held that the trough or cistern was a public well, used for the gratuitous supply of water to the inhabitants of the community in which it was situate, and as such came under the jurisdiction of the local authorities.

The right of the public in wells and watering places located upon common ground is as ancient as the race. Before tenure in land was recognized, camps were set up near watering places by the roving races out of which the Patriarchs sprung. Many of the sweetest romances of the Bible have their setting about the wells and watering places of that day. They were, as they are now, in many of the older villages of Europe, like the well of Nahor, "at the time of the evening—the time when women go out to draw water—" a place for congregation, visitation and gossip. This common use of water has furnished the principle underlying a form of the police power of this day, and under which the governing bodies of cities and towns establish water systems for the use of the public. Having title, therefore, the right to maintain a common watering place should not be denied in this day, for the necessities of man have not changed.

Appellants submit a number of cases affirming the proposition that the right of the public in a road is no more than an easement for highway purposes, and that no interest in the freehold attaches, except such as is or may be necessary to the enjoyment of the easement. They say:

"The title of the former owner is not extinguished; but is so qualified that it can only be enjoyed subject to that easement. The former proprietor still retains his exclusive right in all mines, quarries, springs of water, timber, and earth, and for every purpose not incompatible with the public right of way." *Jackson v. Hathaway*, 15 Johns. 447, 8 Am. Dec. 263.

We shall refer to but two of the cases cited in support of appellants' contention; for, unless critically examined, these might be taken as contrary authority. In *Wright v. Austin*, 143 Cal. 236, 76 Pac. 1023, 101 Am. St. 97, 65 L. R. A. 949, the general principle just quoted was reaffirmed, and it was held that the board of supervisors of Sonoma county could not bore a well in a highway for the purpose of collecting a percolating or subterranean flow for the purpose of sprinkling the public road. The court said:

"In our opinion the subterranean water underlying a highway cannot reasonably be said to be one of 'the incidents necessary to enjoying and maintaining the same,' any more than can the waters of a spring be said to be incident to the easement."

This decision was made to rest partly upon the case of *Town of Suffield v. Hathaway*, 44 Conn. 521, 26 Am. Rep. 483. The *Suffield* case is the main reliance of appellants on this appeal. It is said in the brief quoting from the *Wright* and *Suffield* cases:

"As against the owner of land abutting on a public highway, the selectmen of the town have a right to drain a spring on the highway on such owner's side, in such manner as to render the highway safe from its overflow; but they have no right to divert the water from the spring to a public watering-trough on the other side of the highway. . . . The court having found that the works removed by the respondent were useful only for the purpose of collecting the water from the spring and diverting it from there for the supply of a public watering-trough, this ceases to be a question as to when, if ever, a court will interfere with selectmen in the exercise of their discretion in repairing ways. They had

ceased to act for that purpose; had ceased to provide for public safety; had become ministers to the public comfort. In this last capacity, as against this respondent, they had no power to act at all; therefore we think there is no place for a discussion as to their mode of action."

But these cases, though rightly decided upon the facts, nowhere touch the point involved in the instant case. If in either of these cases the abutting owner had acquiesced in a public use of the waters for a time equal to the period of limitation, a prescriptive right might have arisen. Mr. Elliott, in his work on Roads and Streets (3d ed.), § 499, finds the rule to be that the public has only an easement to pass over the highway. The title to all springs and waters thereon remains in the owner of the fee. He also finds that the abutting owner has a right to restrain the use of the highway for purposes inconsistent with the easement. In speaking of the right to divert the flow of water in a highway, he says the rights of the owner in the fee are not to be unnecessarily interfered with:

"It is to be kept in mind that, unless there is an appropriation by due process of law, the local authorities have no right to use the waters even for a public purpose. As highway officers their right is to so dispose of it as to promote public convenience in the use of the highway." Elliott, Roads and Streets (3d ed.), § 558, note.

It would seem that, if there be a right of appropriation by due process of law, there would also be a right of prescription; and indeed, it is recognized in the case of *Terre Haute & I. R. Co. v. Zehner*, 166 Ind. 149, 76 N. E. 169, 3 L. R. A. (N. S.) 277. The suggestion of the Connecticut court that the powers of the highway commissioners do not extend so far as to allow them to take means to minister to the public comfort, is altogether too broad. We have no doubt of the right of the public to make its highways comfortable as well as safe. If it were not so, improved highways in the modern sense of the term would be impossible. The right to park streets, plant shade trees, and maintain drinking fountains

might be restrained at will by any aggrieved taxpayer. In this case it appears that the watering trough was located upon a long reach of road through a semi-arid country, one of the principal thoroughfares in Douglas county. We opine that the act of the county would not be questioned if the board of county commissioners had bought the waters of the spring and carried them in a pipe to a watering trough on the highway, especially so where, as it may be in this case, water at intervals is essential to the comfort of both man and beast. If we admit this right, the legal conclusion quickly follows: that which the county can buy, it can acquire by prescription. And if it can be shown in this case that it has acquired a part of the waters in controversy by long continued use running over the period of limitation, a decree should follow fixing the quantity it is entitled to, the surplus, if any, to the abutting owner.

The sufficiency of the answer is questioned. We believe that it is sufficient to raise the issue we have discussed in this opinion. We therefore reverse the judgment of the lower court, and remand the case with instructions to proceed to trial.

FULLERTON, PARKER, CROW, and GOSE, JJ., concur.