EL PASO UNION PASSENGER DEPOT CO. v. LOOK et al. (No. 798.)

(Court of Civil Appeals of Texas. El Paso. Feb. 14, 1918. On Rehearing, March 14, 1918.)

1. MUNICIPAL CORPORATIONS ⬤⟿721(2) — PUBLIC PARKS—APPROPRIATION FOR SIDEWALK—ABUTTING OWNERS—INJUNCTION.

A union depot company, owning and operating a station abutting a regularly dedicated city park on which it has, under agreement with the city, spent thousands of dollars for grading, fencing, and beautifying, is entitled to injunction against appropriation of any part thereof for sidewalk purposes.

2. MUNICIPAL CORPORATIONS ⬤⟿721(2)—PUBLIC PARKS—CHANGE OF USE—CHARTER PROVISIONS—INJUNCTION.

Under El Paso Special Charter, § 54, providing that all parks owned by the city are inalienable, and no part thereof shall ever be devoted to other than park purposes, the appropriation of park grounds for streets or sidewalks will be enjoined.

3. MUNICIPAL CORPORATIONS ⬤⟿721(1)—PUBLIC PARKS—IMPROVEMENTS—LIMITATION TO PARK USE.

While the city of El Paso has exclusive control over its parks, and may lay out sidewalks therein where necessary for park purposes, such right does not extend to diverting park grounds to general street and sidewalk purposes.

4. MUNICIPAL CORPORATIONS ⬤⟿721(3)—PUBLIC PARKS — DELEGATION OF CONTROL — MAINTENANCE.

While the city of El Paso may not delegate its authority and control of public parks to create in a union depot company a vested right to keep and maintain the same, and prohibit the city's control and improvement thereof, yet the city may contract for maintenance of park.

5. MUNICIPAL CORPORATIONS ⬤⟿1021, 1022— ORDINANCES — CONSTRUCTION — PRESENTATION OF CLAIM PRECEDENT TO ACTION.

El Paso City Charter, § 71, providing that no suit of any nature shall be maintained against the city, without averring and proving previous application to city council for redress, being in derogation of the common-law right, must be strictly construed.

6. MUNICIPAL CORPORATIONS ⬤⟿1021, 1022— ACTIONS—PRESENTATION OF CLAIM PRECEDENT TO ACTION—INJUNCTION.

El Paso City Charter, § 71, providing that no suit of any nature shall be maintained against the city, without averring and proving previous application to city council for redress, does not apply to equitable remedy by injunction to prevent irreparable injury to abutting owners by diversion of park property to other uses.

7. CONSTITUTIONAL LAW ⬤⟿106 — VESTED RIGHTS—REMEDY—CONSTRUCTION.

While remedies, remedial rights, and process are subject to legislative control, to construe a law, requiring presentation of claim to city counsel for redress precedent to suit for injunction for irreparable injury, would make it invalid as amounting to a denial of all remedy.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by the El Paso Union Passenger Depot Company against the City of El Paso, George Look, and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Turney, Culwell, Holliday & Pollard, of El Paso, for appellant. Jno. L. Dyer and J. H. McBroom, City Atty., both of El Paso, for appellees.

Statement of Case.

HIGGINS, J. This case was tried upon agreed facts. A condensed statement of the material facts is as follows: Appellant was incorporated for the purpose and is the owner of and is conducting a Union Passenger Railway Station in the city of El Paso, at which passengers arrive and depart upon all trains entering and leaving said city. The station was located and built under and by virtue of an ordinance of the city approved November 15, 1902, which authorized the construction and maintenance of said station. The eighth section of this ordinance provides that:

"The city of El Paso hereby obligates itself to acquire by condemnation or otherwise, the north one-half of the west one-half of block 171, according to the map of Campbell's addition to the city of El Paso, Texas, provided the said Union Depot Company agrees and does keep and maintain the same as a public park for the use and benefit of the people of the city of El Paso. The said public park here referred to shall be open to the public by the city of El Paso between the time of the acceptance of this ordinance by the railroad companies interested therein, including the company to be organized, for the purpose of erecting the proposed new Union Passenger Depot, and the time when said depot is completed and in use."

The tract of land referred to in this section is situate in front of the station and across the street therefrom. On December 3, 1903, the city council adopted a resolution, reciting that by the ordinance of November 15th the city agreed to open a new street and to acquire by condemnation said land, "provided the Union Depot maintains the same as a public park." The land upon which the park is situate was owned by C. O. Coffin, and it was thereafter condemned by the city and acquired by it for a public park and park purposes, and since its acquisition has been used as a public park and is now owned by the city. Upon its acquisition it was turned over to appellant for the purpose of improvement and to be made into a public park. When it was so turned over the land was a depression, and in order to make it a

park, it was necessary to fill in a depth of 8 or 10 feet and to build a retaining wall on its south and east sides and to build a fence on the south to prevent people from falling into the depression on the south. All of this was done by appellant at a cost of several thousand dollars, and it also planted the same in grass and trees and made other improvements necessary to its use as a park. Appellant, for itself and the railroads entering El Paso, accepted the provisions of the ordinance of November 15th and has done all of the things required of it by such ordinance. San Francisco street, which separates the park from the station, is at least 75 feet wide. The maintenance of the park and its beautification benefits appellant by making its property more attractive and inviting. In January, 1917, there was pending a suit by the city of El Paso against George Look and D. Storms, wherein the city sought to recover a small tract of land close to the park. The parties to this suit were desirous of compromising it, and to that end the city council, in January, 1917, by resolution authorized its mayor to enter into a compromise agreement with Look and Storms by the terms whereof the city was to dismiss its suit and to dedicate to street and sidewalk purposes all that portion of the park which lies west of the east line of Crossby street as shown on Campbell's addition map, and to construct a sidewalk upon a portion thereof; to construct a curb along the westerly line of the sidewalk, and to pave all that so dedicated for street and sidewalk purposes not covered by said sidewalk. The city was also to dedicate the southerly 14 feet of the park for permanent sidewalk purposes, so that it should at all times be kept open and used for sidewalk purposes and no other. The city further agreed to pass all ordinances necessary to accomplish the dedication of said 14 feet for sidewalk purposes. By the terms of said resolution Look and Storms were to convey to the city for street and sidewalk purposes the land sued for in the suit mentioned; also to build the sidewalk on the southerly 14 feet of the park which the city had agreed to dedicate to permanent sidewalk purposes as above stated. Thereafter the city, Look, and Storms entered into a contract embodying the provisions authorized by said resolution, and proceeded in its performance. In performance of said contract and acting for the city, Look began the construction of a cement sidewalk upon said southerly 14 feet of the park, as Look and Storms in said contract had agreed to do, and was proceeding to build the same with the permission, warrant, and authority of the city, as evidenced by said resolution and contract. No more injury was done to the trees, grass, etc., upon the park than was necessary in properly constructing said sidewalk. It is the purpose of Look to construct business houses upon property owned by him adjoining the park on the south; in front of said houses will be the 14 foot sidewalk. Such houses would be separated from the park by the sidewalk only, and Look would have the benefit of a sidewalk in front of his houses but the same would also afford a passageway and be a sidewalk for the use of the general public. The building of the sidewalk would, to that extent, lessen the area of the park available for grass, trees, etc. Plaintiff is a citizen and taxpayer of the city and county of El Paso, and has no adequate remedy at law for any loss which may be sustained by it in the premises, and the amount of its damage is incapable of exact ascertainment.

Appellant brought this suit against the city of El Paso, Look, and Storms and W. E. Fletcher, an employé of Look, to enjoin the appropriation of any part of the park for street and sidewalk purposes or devoting the same to any purpose other than that for which it was condemned, and to restrain them from doing anything which would interfere with the maintenance of the park by plaintiff, etc. From a judgment refusing any relief the plaintiff prosecutes this appeal.

## Opinion.

[1] The park property was acquired by the city in condemnation proceedings for public park purposes, and it was thereby dedicated to such use. The facts disclose a design and effort to now appropriate a part thereof to street and sidewalk purposes for the use of the general public, and in which Look and Storms would have a special interest by reason of a right of ingress and egress which would be thereby afforded to business houses which Look proposes to erect immediately south of the park. That such appropriation would be to a use inconsistent with the use for which it was originally dedicated is clear. Mr. Dillon says that individual owners of lots adjacent to a public square, the value of which is affected by an illegal diversion of the use of the public place, have such rights and interests that they may maintain a bill in equity to enforce the trust or to restrain the appropriation of the public square by the original proprietors or others to any use inconsistent with the purpose for which it was dedicated. 3 Dillon, Mun. Corps. (5th Ed.) 1132 (661).

Upon its property just across the street appellant maintains and operates a Union Depot Station, at which passengers arrive and depart from all trains entering and leaving the city. Such places at all times have present a greater or less number of weary travelers and others who are awaiting the arrival and departure of trains. At times they spend hours there in a hot and fetid atmosphere and amid throngs of people. What can more conduce to their comfort and the attractiveness of such a place than the presence of an open park just across the street, with flowers, grass, etc., where they can go and

to some extent relieve their discomfort and lessen the tedious wait. Considering the nature of appellant's use of its property, the adjacent park is of very great value to it, and to divert the same or part thereof to crowded streets and sidewalks would materially affect and depreciate the value of appellant's property. Not only this, but appellant, upon the faith of an agreement upon the part of the city to devote the same to park purposes, has spent thousands of dollars in raising the grade, building retaining walls, a protecting fence, planting trees, grass, and otherwise beautifying and improving the park. All of these facts together disclose such a special right and interest in the continued use and maintenance of the property as a park, and such damage to the value of appellant's property necessarily resulting from the proposed diversion, as entitles it to an injunction. The case falls within the rule announced by Mr. Dillon, which has been often approved by the courts of Texas. Corporation v. Ireland, 58 Tex. 183; Richardson v. Lone Star Co., 20 Tex. Civ. App. 486, 49 S. W. 647; Shephard v. Barnett, 52 Tex. 638; McBride v. Rockwall Co., 195 S. W. 926.

[2] The doctrine announced and conclusion reached is regarded as well settled, but, in addition to this, section 54 of the special charter of the city of El Paso approved February 25, 1907, provides that:

"All public parks now owned or hereafter acquired by the city of El Paso, by gift, purchase or otherwise, are hereby declared to be inalienable and no part thereof shall ever be devoted to other than park purposes, nor shall any buildings be erected thereon except such as are intended for and devoted exclusively to park purposes."

[3] In this connection appellees urge that the city by its charter is given exclusive control over its streets, alleys, parks, and public places, and could, as regards this or any other park, erect improvements thereon or make changes therein, provided it was not inconsistent with the dedication, and that the laying of a sidewalk in a park is not an inconsistent use. That the laying out of walks or even streets around or through a park is not at all inconsistent with the dedication for park purposes must be conceded where the same are necessary or contribute to the full enjoyment of the property for park purposes. But there is nothing in this record to indicate that the property proposed to be diverted to street and sidewalk purposes is at all so essential. The facts clearly disclose the contrary. The resolution of the city council, adopted in January, 1917, expressly provides that the southerly 14 feet of the park property is to be dedicated to permanent sidewalk purposes and no other. As to the balance of the property agreed to be diverted, it is plainly inferable from the resolution itself that it was to be dedicated to the general use of the public for street and sidewalk purposes as distinct from any connection with the use and enjoyment of the

park for park purposes. Not only this, the resolution and contract made in pursuance thereof was for the purpose of enabling the city to acquire title to the premises involved in the suit pending in the district court. Look and Storms agreed to convey that property to the city, and the consideration inducing them so to do was the undertaking of the city to devote a part of the park property to street and sidewalk purposes which would be of special interest and profit at least to Look. This is a diversion and devotion of a part of the park property to purposes other than park purposes in violation of section 54 of the city's charter. It is therefore held that the action of the city was unauthorized, and appellant had the right to enjoin it and its codefendants from diverting any part of the park property to the proposed street and sidewalk purposes.

[4] Appellees urge that though section 8 of the ordinance of November 15, 1902, constituted an agreement with appellant whereby the latter should keep and maintain the property as a public park for the use and benefit of the people of the city, such agreement was a delegation by the city of its authority and control of the park which was unauthorized, and did not create any vested right in appellant to keep and maintain same so as to prohibit the city from controlling and improving the park. It is true the city has no right to surrender the control and management of its parks to any one. But no reason is apparent why a contract could not be made with appellant to maintain it. MacDonell v. Railway Co., 60 Tex. 590; City of Brenham v. Water Co., 67 Tex. 554, 4 S. W. 143; City of Corpus Christi v. Central, etc., 8 Tex. Civ. App. 94, 27 S. W. 804. The city must employ some one to do it, and appellant in so doing is only the agent and representative of the city. Appellant could acquire no vested right to maintain the park to the exclusion of the city's right and duty so to do. But these considerations have no controlling influence upon the question of the city's right to divert the use.

[5-7] Section 71 of the charter of the city of El Paso provides that:

"The city council shall have the management and control of the finances and property, real, personal and mixed, belonging to the city; provided, that no suit of any nature whatever shall be instituted or maintained against the city of El Paso unless the plaintiff therein shall aver and prove that previous to the filing of his original petition he applied to the city council for redress, satisfaction, compensation or relief, as the case may be, and that the same was by the city council refused."

Appellees contend that the judgment should be affirmed because compliance with this provision was neither pleaded nor proven by appellant. Such provisions are in derogation of common right and will be strictly construed. 19 R. C. L. 1042. They are in furtherance of a public policy to prevent needless litigation and to save unnecessary expenses and costs, by affording an opportunity amica-

bly to adjust all claims against municipal corporations before suit is brought. 4 Dillon, Mun. Corps. (5th Ed.) 1612 (937).

A literal construction of section 71 would embrace suits of every kind and character and require as a condition of their institution and maintenance a previous application to the city council. But such a construction ought not to prevail if it is opposed to the intention of the Legislature apparent from the statute; and if the words are sufficiently flexible to admit of some other construction, it is to be adapted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. And while the intention of the Legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words. Furthermore, the general terms of a statute are subject to implied exceptions founded on rules of public policy and the maxims of natural justice, so as to avoid absurd and unjust consequences. 2 Lewis' Sutherland Stat. Const. (2d Ed.) §§ 376, 381, 385. The clause relied upon by appellees is attached as a proviso to that portion of the section which gives to the city council the management and control of the finances and property of the city. The proviso is to be regarded as in aid of the management and control of the city's finances and property, vested in the council, and in furtherance of the considerations of public policy upon which such provisions are founded. It was manifestly intended to protect the city against the institution of suits upon pecuniary demands until it had been afforded an opportunity to investigate and amicably adjust the same. Also to protect the city against needless suits affecting its management and control of its own property. This suit does not fall within either of those classes. It is not upon a pecuniary demand, and does not in any wise affect the finances of the city. In so far as it undertakes to enjoin the illegal diversion of the use of the park property, it is not an attempted interference with the management and control of the park. A diversion of the use is a matter quite distinct and apart from any question of management and control. In so far as the petition sought to restrain the city from doing anything which would interfere with the maintenance of the park by appellant, this, it may be conceded, would be a question affecting the right of management and control vested in the city council, and would fall within the letter and spirit of the act. It is therefore held that the proviso in question does not apply to the right to maintain the suit to enjoin the diversion of the use of the property. Considering the section as a whole, it is believed the proviso is susceptible of this construction, and yet preserves fully the intent and purpose of the Legislature. An examination of the authorities discloses that it is very generally held that such provisions are construed as not applying to actions purely equitable in their nature. 19 R. C. L. 1042; 28 Cyc. 1451; note in 50 L. R. A. (N. S.) 186; Davis v. Appleton, 109 Wis. 580, 85 N. W. 515; Joyce v. Janesville, 132 Minn. 121, 155 N. W. 1067, L. R. A. 1916D, 426; Kiser v. Douglass County, 70 Wash. 242, 126 Pac. 622, 41 L. R. A. (N. S.) 1066, Ann. Cas. 1914B, 721; Lonsdale v. Woonsocket, 25 R. I. 428, 56 Atl. 448; Gerow v. Liberty, 106 App. Div. 357, 94 N. Y. Supp. 949; Lamay v. Fulton, 109 App. Div. 424, 96 N. Y. Supp. 703; Sammons v. Gloversville, 175 N. Y. 346, 67 N. E. 622. Only by adopting this construction can absurd and unjust consequences be avoided and the act be harmonized with maxims of natural justice. Appellant has no remedy to prevent the consummation of the threatened injury except by promptly invoking the equitable power of the courts to enjoin the same. If, as prerequisite to instituting and maintaining such a suit, appellant must first apply to the city council, it would be helpless. It must first await the sitting of the council, then await its deliberation and decision, and by that time the wrong would have been accomplished, the injury done, and appellant left without a remedy. While remedies and remedial rights and process are always subject to the control of the Legislature, yet it is not competent, directly or indirectly, to deny all remedy. Ins. Co. v. Shearman, 43 S. W. 1063; De Cordova v. Galveston, 4 Tex. 470; Black's Const. Law (3d Ed.) 602; 1 Cyc. 704. Appellant's special interest in the continued use of the property for which it was dedicated was a vested right, and it may well be doubted whether it could be deprived of that right, though the operation of a statute which so delayed its right to apply to the courts for protection as in effect deprives it of such protection. We do not, however, care to base our decision upon this consideration, but rest it upon the construction placed upon section 71.

The cause will be reversed, and judgment here rendered for appellant, enjoining the defendants, and each of them, their officers, agents, and employés, from appropriating any part of the park property for street and sidewalk purposes, as authorized by the resolution of the city council adopted in January, 1917, and as provided in the contract entered into between the defendants in pursuance thereof, and that said city, its officers, agents, and employés be further enjoined from diverting any part of said property to any use other than for public park purposes. All further relief asked is refused.

Reversed and rendered.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.

## On Rehearing.

HIGGINS, J. Appellees in their motion for rehearing say that it is not their purpose to divert any part of the park property to street purposes. This motion is the first information this court has had of this fact. The original record reflects the contrary.

It is stated in the motion that the only part intended to be used for street purposes is the west part of the park as at present laid out; that as at present laid out, the park encroaches upon San Francisco street, formerly Crosby street, and extends west of the west line of the north one-half of the west one-half of block 171, according to the map of Campbell's addition. The park property referred to in the decree rendered by this court is not to be construed as embracing any premises except those lawfully dedicated to park purposes. It is not to be construed as determining where the west line of the north one-half of the west one-half of block 171, according to the map of the Campbell addition, is situate. Nor it is to be construed as determining what part, if any, of the park as now laid out is situate in San Francisco street. If any controversy exists concerning these matters, they may be determined in proper proceedings raising the question. Certainly all of the north one-half of the west one-half of block 171 has been lawfully dedicated to park purposes, and no part thereof under our decree can be diverted to either street or sidewalk purposes.

With this explanation of the scope of the decree rendered, the motion for rehearing is overruled.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes