LOOK et al. v. EL PASO UNION PASSEN-
GER DEPOT CO. (No. 175–3200.)

(Commission of Appeals of Texas, Section A.
March 16, 1921.)

1. Municipal corporations ⊕⇒721(1) — City may not divert park property for construction of sidewalk to benefit private party.

In view of Special El Paso City Charter, §§ 54, 93, providing that property acquired by the city for park purposes shall be inalienable, and for the construction and repair of sidewalks and crossways thereon, the construction of a sidewalk on a 14-foot strip on the edge of a park, for the use of a party with whom the city was adjusting a lawsuit, is a diversion of park property which may be enjoined.

2. Municipal corporations ⊕⇒1020—Party need not apply to council for redress before proceeding to enjoin city's diversion of park property.

A suit to enjoin the city from diverting park property to sidewalk uses for a private person is· not within Special El Paso City Charter, § 71, requiring application to the city council for redress as a prerequisite to filing suit.·

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by the El Paso Union Passenger Depot Company against the city of El Paso, George Look, and others. Judgment for defendants was reversed and rendered by the Court of Civil Appeals (201 S. W. 714), and defendants bring error. Judgment of the Court of Civil Appeals affirmed.

J. H. McBroom, John L. Dyer, and Gowan Jones, all of El Paso, for plaintiffs in error.

Turney, Culwell, Holliday & Pollard, of El Paso, for defendant in error.

TAYLOR, P. J. The following is a condensed statement of the material matters in the statement of facts upon which the case was submitted to the trial court:

The ordinance of the city of El Paso, under which the El Paso Union Passenger Depot Company constructed and has subsequently maintained its depot, contains among others, a provision obligating the city to acquire the north one-half of the west one-half of block 171, according to the map of Campbell's addition to the city of El Paso, Tex., on the condition that the ·Union Depot Company keep and maintain the land acquired as a public park for the use and benefit of the people of the city of El Paso. The depot company, for itself and the railroads entering the city of El Paso, duly accepted the provisions of the ordinance, including the provision obligating it to keep and maintain the park. The plot of ground designated was acquired by the city by condemnation, and turned over to the depot company for improvement and for making into a public park. It has subsequently been used as a public park and for park purposes, and is still owned by the city. The depot company in improving the ground and making it into a park, made all the necessary fills, built concrete retaining walls on the east and south sides thereof, and for purposes of safety constructed an iron fence along the south side. The company also planted trees and grass, and made other improvements necessary for using the ground for park purposes. All these things were done by the depot company in good faith and at a cost of several thousand dollars. The company, for itself and on behalf of the railroads, complied fully with the requirements of the ordinance.

The Union Depot is situated on the west side of San Francisco street, facing east. San Francisco street runs north and south, and into Davis street, which runs east and west. The depot adjoins Davis street on the north. The park adjoins San Francisco street on the east side, and faces west. The park and the depot· are separated by the width of S'an Francisco street, a distance of about 75 feet. Prior to January, 1917, the city of El Paso sued George Look and D. Storms in trespass to try title to recover a tract of land near the park adjoining the west·side of block 171, being a part of what was claimed by the city to be Crosby street. Being desirous of compromising the suit, the city council passed a resolution and ordinance setting forth that it was agreed by the parties that the city would dedicate to street and sidewalk purposes all that portion of the park as then laid out lying west of

the east line of Crosby street as shown on the Campbell addition map; that the city would construct a sidewalk upon a portion thereof, construct a curb along the westerly line of the sidewalk, and pave all of that part so dedicated, not covered by said sidewalk. The city was also to dedicate the southerly 14 feet of the park for permanent sidewalk purposes. Look and Storms, under the terms of the settlement, were to convey to the city the land sued for, and build the sidewalk on the southerly 14 feet of the park. In March, 1917, a contract of compromise was entered into by the city of El Paso and Look and Storms, containing the same terms and conditions as were embodied in the resolution.

It was the purpose of defendant Look to build business houses upon the property owned by him adjoining the park on the south. The houses would not, however, be upon any part of the property embraced within the limits of the park. In carrying out the settlement made with the city, Look would have the benefit of a sidewalk in front of his houses, but the sidewalk would also afford a passageway for the general public. The laying of the 14-foot walk would to that extent lessen the area of the park for planting grass, trees, etc. The maintenance and beautification of the park would benefit the depot company by making its property more attractive and inviting. If a loss should be sustained by the company on account of the doing of the things agreed upon in the compromise settlement, the amount thereof would not be capable of exact ascertainment, and the depot company would have no adequate remedy at law therefor.

Section 54 of the special charter of the city provides that all parks owned or thereafter to be acquired by the city should be inalienable, and that no part thereof should ever be devoted to other than park purposes. Section 93 of the charter enumerates as among the general powers and duties of the city council that it shall establish, construct, and keep in repair, among other things, sidewalks and crossways, and regulate the construction and use thereof. Section 71 provides that the city council shall have the management and control of the finances and property belonging to the city:

"Provided, that no suit of any nature whatever shall be instituted or maintained against the city of El Paso unless the plaintiff therein shall aver and prove that previous to the filing of his original petition he applied to the city council for redress, satisfaction, compensation or relief, as the case may be, and that the same was by the city council refused."

In the performance of the terms of the compromise settlement, Look and Storms executed and delivered to the city the deed conveying the land sued for, as agreed. Look began, with the permission, warrant, and authority of the city, the construction of the sidewalk upon the southerly 14 feet of the park. Thereupon the El Paso Union Passenger Depot Company, defendant in error, a citizen and taxpayer of the city and county, filed this suit against the city of El Paso, Look, and Storms, and W. E. Fletcher, an employee of Look, to enjoin the appropriation of any part of the park for street and sidewalk purposes, or from devoting the same to any purpose other than that which would interfere with the maintenance of the park by defendant in error.

On a trial of the case without a jury, the court refused to grant the relief prayed for, and dissolved the temporary injunction theretofore granted. The Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment for the depot company, enjoining plaintiffs in error from appropriating any part of the park property for street and sidewalk purposes, and from diverting any part of said property to any use other than for park purposes. 201 S. W. 714.

The court, on rehearing, in explaining the scope of its decree, stated that the park property was not to be considered as embracing any premises except those lawfully dedicated to park purposes; also that its opinion was not to be considered as determining where the west line of the north one-half of block 171 is situated, nor as determining what part, if any, of the park as now laid out is situated in San Francisco street. The conclusion reached was that all of the north one-half of the west one-half of block 171 had been lawfully dedicated for park purposes, and that no part thereof could be diverted to either street or sidewalk purposes. 201 S. W. 718.

[1] The fundamental question in the case is whether the construction of a public sidewalk on the 14-foot strip referred to constitutes as a matter of law a diversion of that part of the park to a use inconsistent with park purposes. If the construction of the sidewalk by Look under the city's authority would constitute such a diversion, defendant in error was entitled to the relief sought. If not, the judgment of the trial court should be affirmed. It is a matter of common knowledge that sidewalks are laid through and around public parks. To lay walks through and around such parks is not therefore necessarily a diversion of that part of the parks so used to other than park purposes.

It appears, however, that in this case, the immediate occasion and purpose on the part of the city in laying the sidewalk was to secure an adjustment of its lawsuit with Look and Storms. The property was originally dedicated exclusively for park purposes, and not for public streets or highways. There is a distinct difference between a dedication for park purposes and one for highway purposes. To give property for uses of a park, particularly where the area is small, pre-

-cludes the idea that sides of the property may be taken over for sidewalk purposes. The case appears to be one where the city made use of the park property to adjust its lawsuit, resulting in an appropriation of a part of the park property for the benefit of the defendant Look. The laying of the walk under such circumstances was a diversion of the property from park purposes, as held by the Court of Civil Appeals.

[2] We concur, also, in the conclusion of the Court of Civil Appeals that a suit seeking injunctive relief of this character is not within section 71 of the city charter, requiring that the city council be applied to for redress as a prerequisite to filing suit.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.