The CITY OF EL PASO, a Municipal Corporation, Appellant,

v.

E. R. PARISH, Appellee.

No. 5151.

Court of Civil Appeals of Texas.

El Paso.

June 6, 1956.

Rehearing Denied July 24, 1956.

Travis White, City Atty., H. E. Brockmoller, Asst. City Atty., El Paso, Tex., for appellant.

Guinn & Guinn, A. L. Carlton, El Paso, Tex., for appellee.

HAMILTON, Chief Justice.

This is an appeal from a judgment recovered by appellee, E. R. Parish, against the City of El Paso, appellant, for personal injuries sustained when he as an employee of the city, undertook to weld a pulley on top of an asphalt tank, and an explosion occurred. The pertinent facts are these:

The City of El Paso maintains a plant for the preparation of street paving material. In the plant there was a large tank which was underground except about eighteen inches, and in which tank asphalt was stored. On top of the tank was a small iron platform welded to the tank, and bolted to the top of the platform was a pump for removing the asphalt. On December 9, 1952, a pulley attached to the pump broke and needed to be repaired by welding. The appellee, Parish, was a welder employed by the city auto shop, not the paving plant. He was an experienced welder of 22 years experience and the only city employee whose duty was to do welding. Mr. Schwartz, who is in charge of the Street Department, and therefore of the paving plant, had no "jurisdiction" over the auto shop, but asked Parish to go over and weld the broken pulley. Mr. Butterfield, the superintendent of the auto shop, was not present. In his absence the shop was in charge of assistant superintendent, a Mr. Edwards, a parts man and clerk, not a mechanic. The request was cleared with Edwards, who told Parish

"Go over and fix it". Parish drove over to the paving plant with his welding equipment in a portable rig. Appellee Parish testified that there was a strong smell of asphalt in the area of the tank, and that he knew asphalt was in the tank. He proceeded to do the welding on the pulley and pump while it was in place on the tank. When he turned on his electric arc and started welding the arc ignited the vapor, or fumes, and an explosion occurred in which Parish was injured. Parish was taken to the hospital, where he stayed for about three weeks. While in the hospital he was called on by Edwards, the assistant superintendent, and Butterfield, the superintendent. Parish was told by one or both of them in effect that he was not to worry, that everything would be taken care of. Subsequently the nurses' bills and hospital bill were paid for by the city. Parish was off about six weeks from work by reason of his injuries, but his salary was paid for the time he was off.

Suit was filed September 9, 1954, by Parish, for damage, alleging negligence on the part of the city. The City answered by filing what is designated as first and second pleas in abatement, alleging that plaintiff had no right to maintain his suit because previous to the filing of his original petition plaintiff had not applied to the City Council for redress, satisfaction, compensation or relief; the second plea in abatement says that plaintiff has no right to maintain his suit because appellee Parish failed to give notice to the Mayor within thirty days after the date of his injuries, as required by the ordinance of June 2, 1938, recorded in Minute Book Y–2, page 426. Further, the city filed a general denial, and set up a defense of assumed risk and contributory negligence on the part of appellee Parish.

In plaintiff's (appellee's) second amended original petition filed February 14, 1955, on which he went to trial, in answer to appellant's plea in abatement based on non-compliance with the Charter provision requiring application to be made to the City Council for redress, satisfaction, compensation or relief previous to filing of original petition, the appellee alleged that he had filed proper application for redress, satisfaction, compensation or relief with the City Council. There was no allegation that such application for redress was made prior to the filing of plaintiff's original petition.

Both of appellant's pleas in abatement were overruled by the court, and the cause proceeded to trial on appellee's second amended original petition.

Appellant contends that this case should be reversed because Parish failed to apply to the City Council for redress, satisfaction, compensation or relief, as required by Par. 71 of the City Charter. Such provision reads as follows:

"The City Council shall have the management and control of the finances and property, real, personal and mixed, belonging to the city; provided, that no suit of any nature whatever shall be instituted or maintained against the city of El Paso unless the plaintiff therein shall aver and prove that previous to the filing of his original petition he applied to the City Council for redress, satisfaction, compensation or relief, as the case may be, and that the same was by the City Council refused."

This provision was impliedly recognized as valid in El Paso Union Passenger Depot Co. v. Look, Tex.Civ.App., 201 S.W. 714, affirmed, Tex.Com.App., opinion not adopted, 228 S.W. 917, although it was held not applicable to an injunction suit. In Luke v. City of El Paso, Tex.Civ.App., 60 S.W. 363, it was held as a condition precedent to recovery against the city. In that case the plaintiff pled or averred that the Charter provision had been com-

plied with, however there was no proof that such Charter provision had been complied with, and the plea for recovery was denied.

A copy of a letter addressed to the Mayor and the City Council of El Paso on October 5, 1954, is as follows:

"Hon. Mayor and City Council,
"El Paso, Texas.

"Dear Sirs:

"Several months ago, as attorneys for Mr. E. R. Parish, we notified Mr. Travis White, City Attorney, of the claim of Mr. Parish for injuries suffered on the 9th day of December, 1952, while employed by the City. We understood that this matter was taken up with proper authorities and was denied. Suit was filed by Mr. Parish and the City has filed plea in abatement contending the claim has never been presented. We therefore present this claim, in the form of the petition attached hereto, so that there may be no question of your having an opportunity to pass upon same. If you desire to discuss the claim we shall be glad to do so. If not, will you please accept or reject the claim as soon as possible. I am certain you will find that investigation and consideration of the claim has been had.

"Yours very truly,
"/s/ Ernest Guinn
"A. L. Carlton,
"Guinn & Guinn
"Attorneys for E. R. Parish.

"Claim Attached."

This letter referring to the notification of Travis White, City Attorney, of the claim for Mr. Parish for injuries suffered on December 9, 1952, is insufficient proof to show a compliance with said paragraph 71 of the City Charter. City of Waco v. Watkins, Tex.Civ.App., 292 S.W. 583. The letter itself, together with the copy of the first original petition does not satisfy the Charter provision, because it was not sent prior to Sept. 9, 1954, date of filing the original petition, since the suit was then pending the letter could not be in compliance with the Charter provision. We do not mean to hold that one having filed suit before applying for redress to the City Council is forever cut off from his remedy. He may dismiss his suit and after applying for redress refile his suit if his claim is denied.

We overrule appellant's points 1 and 2 wherein it is contended that appellee assumed the risk as a matter of law. In order to hold appellee assumed the risk as a matter of law we must hold that he knew or should have known of the danger involved. Although the facts make out a strong case of assumed risk, appellee testified that he had on two previous occasions done welding on the tank in question and that nothing happened. We therefore think that under all the evidence it was a question of fact for the jury as to whether appellee knew or should have known of the danger in doing the welding on the tank.

Appellant's points 3 and 4 are overruled without discussion.

In appellant's point No. 5 it contends the case should be reversed because the answers of the jury to issues Nos. 16 and 31 are in irreconcilable conflict. Both of the issues are pertinent to appellant's defense of assumption of risk on the part of appellee. Question No. 16 is as follows:

"Do you find from a preponderance of the evidence that on or about December 9, 1952, just prior to the explosion complained of, Plaintiff knew, or in the exercise of ordinary care should have known of the danger, if any, in welding or attempting to weld on a pump attached to an asphalt tank? Answer yes or no."

to which the jury answered "Yes".

Question No. 31 is as follows:

"Do you find from a preponderance of the evidence that on or about December 9, 1952, just prior to the explosion complained of, Plaintiff knew or in the exercise of ordinary care should have known of the danger, if any, to his safety in welding the pulley on the pump in question situated on the asphalt tank in question?"

to which the jury answered "No".

We think this point should be sustained. While the two questions are not couched in exactly the same language, they are each designed to procure a finding from the jury on the question of the knowledge of appellee as to the danger involved in the work he was to do. These two findings of the jury destroy each other, and the court is left without any finding of the jury on the facts bearing on appellant's defense of assumed risk.

█ In answer to appellant's allegations that the appellee failed to give notice to the Mayor within thirty days after date of his injuries, as required by the city ordinance before the city could be liable for damages, the appellee alleged that Ordinance No. 744, passed subsequent to the ordinance requiring notice within thirty days, superseded and took the place of the notice requirement; and further the appellee should recover his pay the balance of his life on account of his being totally and permanently incapacitated as the result of an injury received in the line of duty. Ordinance No. 744 is too long to quote here in full. We do quote the paragraph that is applicable:

"Employees injured in the line of duty shall receive special leave with pay in the amount of time necessary to recuperate, subject to approval by the department head, Civil Service Commission and the City Council, upon recommendation of a qualified doctor. Such leave shall not be considered as special sick leave, and shall not be deducted from regular sick leave."

We think from the terms of said ordinance the purpose was to provide a legal way in which the city could, if it so desired after approval by various city authorities, pay employees for services not rendered, by granting extended sick leave in exceptional circumstances, and in case of injuries received in line of duty payments could legally be made for absences necessitated by such injuries. However, regardless of what interpretation is placed on the ordinance as to the legal liability of the city thereunder, there can be no recovery in this case against the city by virtue of said ordinance for the simple reason that since the injury of appellee every application for relief made by him under such ordinance has been approved and granted by the city. There is no merit in appellee's contention that Ordinance No. 744 supersedes the ordinance requiring the thirty days notice.

Appellant argued under his seventh point that this case should be reversed and rendered because the appellee failed to comply with the ordinance of the city providing that the city shall not be liable for personal injury cases unless written and verified notice of certain facts is given to the Mayor by or on behalf of the injured person within thirty days from the date the injury was received. There is no point made by the appellee that this is not a valid ordinance. While there were no allegations of waiver of the required thirty days notice and of estoppel contained in appellee's second amended original petition, on which the case went to trial. The court did submit special issues bearing on waiver and estoppel. There was no objection on the part of appellant to the submission of said issues on the ground that there were no allegations to support them, however appellant did object to the submission on the ground that there was no evidence to support them.

Since this case was tried, the Supreme Court has handed down a decision in the case of the City of Houston v. Hruska, Tex.Civ.App., 283 S.W.2d 739, which we think is controlling in this case. In that case the court discusses the principal cases in Texas bearing on the subject of waiver and estoppel in cases similar to the one before us. These cases are Phillips v. City of Abilene, Tex.Civ.App., 195 S.W.2d 147, writ refused; Hallman v. City of Pampa, Tex.Civ.App., 147 S.W. 2d 543, writ refused; Cawthorn v. City of Houston, Tex.Com.App., 231 S.W. 701; City of Waco v. Thralls, Tex.Civ.App., 128 S.W.2d 462; Id., Tex.Civ.App., 172 S.W.2d 142. From a thorough study of the above cases we have determined that there is no evidence of probative force sustaining either waiver of the required notice or conduct on the part of authorized officials of the city amounting to estoppel. In the first place, no one but the Mayor or City Council or someone by their authority would have authority to waive the provisions of an ordinance, second, any authorized act or conduct on the part of Mayor and Council relied on by appellee as waiving the required notice would have to be done with the intent that such conduct or act would constitute a waiver of the provision. Appellee relies on payment of salary, hospital bills and medical bills by the city as evidence of intent to waive the thirty-day provision under the ordinance. While the record reflects it is customary for the city to pay salary, hospital and medical bills of employees injured in the line of duty with the understanding that the employee is to repay the city the hospital, medical and nurses bills out of any insurance that he may collect from third parties by virtue of such injury, the obligation to pay such bills is primarily that of the city. Appellee in this case repaid the city some $200 collected from his hospital insurance. It is admitted by the appellee that he never at any time within the thirty days discussed with any official, or intimated to any official of the city that he thought he had a claim for damages, or that he intended holding the city liable for damages by virtue of said injuries. We therefore think that payment of such salary and bills on the part of the city was no evidence of an intention on the part of authorized officials to waive the provision of the ordinance requiring notice within thirty days.

While certain acts and conduct on the part of the city might fail to amount to a waiver of compliance with an ordinance of the nature of the one which we have before us, those same acts and conduct may give rise to estoppel, the difference being, intention is a necessary element in waiver, whereas it is not in estoppel. It appears, however, that in order to show estoppel it must be shown that the authorized acts and conduct of the city during the thirty-day period, must be such that he was led to believe that there was no need for him to file the required written notice, and that by reason of reliance upon such conduct of the city he did not file same. There is no evidence in this case that appellee failed to file such required notice on account of reliance upon any conduct of the city within the thirty-day period. Appellee testified that statements made by Mr. Butterfield and Mr. Edwards that he need not worry, that he would be taken care of, were relied on by him. There is no evidence that he would have filed his required notice within the thirty-day time but for reliance upon such statements, or that he would have filed such notice but for the payment of hospital, medical and nurses bills by the city.

Payment of his salary could not be the basis of any estoppel because such payment was provided for in Ordinance No. 744. Neither do we think that the payment of the medical bills, hospital bills and nurses bills by the city under the circumstances under which they were paid, with the understanding that they would

be repaid as set out above, could be the basis of estoppel.

The judgment of the court below is reversed, and judgment here rendered that appellee take nothing by his suit.