[No. 8505.   Department One.   May 4, 1910.]

## RUTH MASON, *Appellant*, v. JOHN A. YEARWOOD *et al., Respondents.*[1]

WATERS AND WATER COURSES—APPROPRIATION—RIPARIAN RIGHTS. The right to waters by a prior appropriation thereof obtains only in the case of waters upon public lands, and not to waters upon land where the title from the government had been obtained or initiated; since the common law doctrine of riparian rights prevails in this state and would attach to lands acquired from the government, preventing appropriation thereof.

SAME—RIPARIAN RIGHTS—NEW SPRINGS. No riparian rights can be claimed by a lower proprietor in or to the waters of a new spring that breaks out upon the lands of another and flows therefrom across his land, riparian rights attaching only to streams that are wont to flow from time immemorial.

SAME—WATER RIGHTS — PRESCRIPTION — ADVERSE USE—EXTENT— EASEMENTS. Where new springs broke out upon the defendant's land, and the flow constantly increased from year to year, an adjoining owner, who for twenty-five years diverted and continuously used water from the springs, acquired a prescriptive right to the use of so much of the water as she had adversely used during the statutory period of ten years immediately preceding defendant's obstruction thereof; since easements may be acquired by adverse use; but the plaintiff could not enjoin the defendant's use and diversion of the increased flow not diverted and adversely used by the plaintiff ten years previously.

[1]Reported in 108 Pac. 608.

Appeal from a judgment of the superior court for Kittitas
county, Preble, J., entered June 14, 1909, upon findings in
favor of the defendants, after a trial on the merits before
the court without a jury, in an action to enjoin the diversion
of waters used for irrigation purposes.    Affirmed.

*O. O. Felkner*, for appellant.

*Hovey & Hale*, for respondents.

FULLERTON, J.—This is an action to enjoin the diversion
·of water.  From the record it is gathered that the appellant,
who was plaintiff below, owns land situated in sections twelve
and thirteen, township eighteen, north, of range seventeen,
east, of the Willamette Meridian.  That the respondents own
land in section eleven in the same township and range.  To
the south of the respondents' land, and in the same section, is
land belonging to one Haywood.  In 1879 one Alanson T.
Mason filed a homestead application for the lands now owned
by the appellant, together with that owned by Haywood, and
thereafter procured title to the same under the homestead
laws of the United States.  The appellant and Haywood have
obtained their titles through mesne conveyances from Alanson
T. Mason.  The land owned by the respondents was first set-
tled upon prior to 1880.  The claim passed from one to an-
other until it reached one Pardee, who settled thereon in
March 1884, and in due time obtained title thereto from the
government.  The respondents derive their title through him.
The lands mentioned have a general slope to the east and
southeast, and are arid in the sense that they require irriga-
tion to produce crops.

Sometime in the year 1882 or 1883 springs broke out on
the southwest corner of the land now owned by the respond-
ents, which caused a swamp to form immediately below and
surrounding them, which drained down through a draw ex-
tending across the land now owned by Haywood, but which
belonged to Alanson T. Mason, onto the land now owned by
the appellant.  In 1884 Mason caused a ditch to be dug

through this draw to a point on his own land immediately below the swamp formed by the springs, through which he took the water from the swamp across the Haywood land to the land now owned by the appellant, where he put it to a beneficial use. This ditch he and his successors in interest have maintained until the present time. In 1890 or 1891 the respondent dug a small ditch leading from the springs to his house, and took water therefrom for stock and domestic purposes.

In 1902 the respondents, for the purpose of draining the swamp formed by the springs, constructed a ditch on the east side of the swamp, conveying the water to their south line where it entered a ditch constructed on the Haywood land. Subsequently the appellant connected this with her own ditch, and from that time until the spring of the year 1908 the waters therefrom continually flowed down onto her premises where she used it for purposes of irrigation. On the last date mentioned, the respondents constructed a new ditch from this latter ditch eastward on their own land, which had the effect of diverting a considerable part of the water from the springs away from the appellant's ditch. It is to restrain this diversion that the present action is prosecuted.

At the trial there was evidence tending to show that the springs which give rise to the marsh or swamp on the respondents' lands had no existence prior to the year 1882, or, if they flowed at all, it was only for a short time in the spring of the year when the snow of the winter was melting; that what is now swamp and marsh land was then dry so that it could be ridden or driven over at any season of the year. In fact, witnesses testified to cutting hay thereon with a mower as early as the month of June. It was given in evidence, also, that the spring began to be active only after the owners of the lands to the west and above the springs began to irrigate their lands; that the flow increased as irrigation increased, and that this increase has been continuous, there

being much more water flowing from the springs now than did flow therefrom even a few years ago. It appears also that the swamp itself is constantly increasing in size, being much larger now than it was even ten years ago. It does appear, however, that for more than twenty-five years a continuous stream has flown from the springs into the swamp and from the swamp into the drainage and irrigation ditches of the appellant, and from there to her lands where it has been used continuously for the purposes of irrigation. Moreover, it appears that all of the water coming from the springs, except the small quantity taken by the respondent in 1901, which he uses for domestic and household purposes, has been so used, and that its use was without interruption until the respondents made the diversion which gave rise to this action.

The appellant on this appeal makes three principal contentions. She contends, first, that she is entitled to the water from these springs in virtue of a prior appropriation; second, that she is a riparian proprietor on the stream that flows from the springs, and is entitled as such to have the same flow onto her lands as it was wont to flow in a state of nature, without waste or unnecessary diminution by the land proprietors on the stream above her land; and third, that she is entitled to the water by prescription, since she has had the open and notorious possession and use of the same for a period of time longer than the time of the statute of limitations, all the while claiming the right to such possession and use adversely against all the world.

The trial judge, passing on the contentions made in the court below, held that neither the first nor second was maintainable under the evidence, and we think his conclusions in that regard were just. As we held in *Nesalhous v. Walker*, 45 Wash. 621, 88 Pac. 1032, the common law doctrine of riparian rights prevails in this state; and that where rights to lands across which a stream of water flows are acquired or initiated prior to any appropriation of the waters of the stream, the rights of the riparian proprietors are determined

by the rules of the common law relating to riparian proprietors, and not by any rule of prior appropriation. The same rules would apply to springs, whether existing from time immemorial or of new creation. They could only be appropriated if existing or appearing on land to which no title had been acquired from the government or initiated looking to such acquirement. So in this case, it seems to us clear that the appellant's predecessor in interest made no appropriation of the waters of these springs until long after initiatory steps had been taken by the respondents' grantors to acquire title to the land on which they appeared. Such being the case, the respondent is entitled to hold them and claim the waters therein as against any claim of prior appropriation.

The contention that the appellant can enjoin a diversion of the water, on the ground that she is a riparian proprietor on the stream flowing from the marsh, is also without foundation. While one may have riparian rights in a stream even though its source be a spring upon the land of another (*Hollett v. Davis*, 54 Wash. 326, 103 Pac. 423; *Miller v. Wheeler*, 54 Wash. 429, 103 Pac. 641, 23 L. R. A. (N. S.) 1065), yet it must be a stream that was wont to flow from time immemorial. The owner of land upon which a new spring breaks out may make such use of the waters as he pleases, notwithstanding it would, if unmolested, cause a stream to flow across another's land. Any other rule would make his estate involuntarily servient to a use to which it was not subject when he acquired it.

The third contention is not discussed in the written opinion filed by the trial judge and we are not advised as to the reasons which prompted him to deny relief on that ground. It has seemed to us that the appellant can justly claim a right by prescription to a portion of the flow from these springs. It is clear from the evidence that the appellant and her predecessors in interest have appropriated and used the waters flowing from the springs, with the exception of that

before mentioned which the respondents have diverted for domestic uses, for a period of nearly twenty-five years. While there is no direct, statute governing the matter, the courts generally hold that an easement is acquired in the lands of another by an adverse user for the period of the statute of limitations; *Wasmund v. Harm*, 36 Wash. 170, 78 Pac. 777; *Ricard v. Williams*, 7 Wheat. 59, 110. So, in this case, the appellant is entitled to the continuous use of so much of the waters flowing from these springs as she has had the continuous adverse use of for a period of ten years immediately preceding the time the respondents diverted it. This does not mean all of the water flowing through her flumes at the time of the diversion, but a quantity equal to the quantity that was wont to flow thereon ten years prior to that time. Since the spring has materially increased in size and flow during the last ten years, the respondents are entitled to check it, if they may, or appropriate to their own use the increase of flow. Their estate in their lands needs stand servient only to the easement they are estopped to dispute from lapse of time. They are not estopped to interfere with the increase of flow occurring within the ten-year period, for otherwise their whole estate might become servient to this particular use.

The appellant cites *Dickey v. Maddux*, 48 Wash. 411, 93 Pac. 1090, to the point that a right to a use of waters arising from springs on the land of another cannot be acquired by adverse use, but this point was not decided in that case. It was the opinion of the writer that the question was there presented, and should have been met and determined, but the court determined the question on other grounds. The doctrine that prescriptive rights in the use of waters flowing across or arising on the land of another may be acquired by adverse user has been repeatedly recognized, if it has not been expressly decided, by this court. *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Spring Hill Irr. Co. v. Lake Irr. Co.*, 42 Wash. 379, 85

Pac. 6; *Matheson v. Ward*, 24 Wash. 407, 64 Pac. 520, 85 Am. St. 955; *Hollett v. Davis, supra.*

The record, however, is not sufficiently complete to enable us to direct the proper judgment to be entered. While it shows that the respondent in 1908 diverted a considerable proportion of the waters then flowing from the springs, probably greater than he was entitled to as of right, it fails to show what the excess was. This could only be determined by ascertaining the quantity of water flowing into the appellant's ditches and flumes at a time ten years prior to the time of the diversion, and substracting that quantity from the quantity now flowing from the springs, but there is nothing in the evidence that enables us to do this, as the appellant seemingly tried her case on the theory that she was entitled to all of the waters flowing from the springs. This was, of course, the fault of the appellant, but we do not think that she should, because thereof, lose her right to recover such proportion of the water as is legally her due. Nor do we think the respondents should be obligated to bear the burden of the cost of the trial of the cause or its appeal to this court. The judgment of the court will be, therefore, that the judgment appealed from stand affirmed, but without prejudice to the right of the appellant to bring a new action for the ascertainment of the quantity of water she is entitled to by prescription, and to perpetually enjoin the respondents from interfering therewith. No costs will be allowed either party in this court.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.