This is a proceeding in equity brought under the state water code, chap. 117, Session Laws of 1917, p. 447; Rem. Comp. Stat., § 7351, to adjudicate the various water rights in the Ahtanum creek, in Yakima county. It involves the rights of 216 claimants and land owners in the waters of the creek, whom the state supervisor of hydraulics, after a hearing as referee, classified into thirty groups, according to the dates of the initiation of their respective water rights, and the trial court, after hearing on the exceptions to the findings and recommendations of the supervisor, as referee, divided into thirty-one classifications or *Page 86 
groups. Of the 216 claimants whose water rights were adjudicated, some owning several tracts of land apiece, only a comparatively small number have appealed.
Owing to the immensity of the record, number and variety of the questions raised, the discussion must necessarily be condensed into the smallest compass.
Ahtanum creek was the first creek used for irrigation in the Yakima valley. The first settlement on the creek was made prior to 1853 by Catholic missionaries, who, immediately upon settlement diverted water to the lands claimed by them and raised crops by irrigation. There was not much settlement between 1853 and 1867, but from 1867 to 1875 practically all the land riparian to the creek was taken up by homesteaders and the waters of the creek used for raising crops upon their lands. In 1884, after the riparian rights of a large number of settlers along the creek had attached, a block of non-riparian land near a place called Tampico was settled upon by other settlers, among whom was Philip A. Johncox. He diverted water from the creek to this non-riparian land, and filed an appropriation of the waters of the creek for the use of all the settlers in his vicinity, by means of a canal which he proposed to build. He organized the Tampico Canal Company, which was later reorganized into the Johncox Ditch Company, which is the principal appellant in this case. The ditch was commenced in 1884. Contest for the water rights of the stream immediately arose, and in 1896 the riparian owners along the stream started suits against Johncox and his company, and others associated with him, and obtained an injunction restraining the Johncox Ditch Company, then the Tampico Canal Company, from taking water from the creek. The decree in the consolidated cases in Benton v. Johncox was entered in the superior court of Yakima county on April 11, 1896. The case was appealed to this court *Page 87 
and affirmed in 17 Wn. 277, 49 P. 495, 61 Am. St. 912, 39 L.R.A. 107, on July 2, 1897.
In the proceeding before the referee, and also before the trial court, the judgment roll in Benton v. Johncox was introduced in evidence. Under the provisions of § 20, of the water code, supra, it is the duty of the referee and the court to notice and give effect to all such prior decrees. The referee, in his report, declared that he had given effect to all the provisions of the decree in Benton v. Johncox wherever practical. One of the things, wherein it was probably impracticable to follow the decree, was in the matter of the duty of water.
At that time, 1896, under the conditions then prevailing, and doubtless upon the current standards of duty of water in the locality, the trial court fixed the duty of water in its adjudication at one-half of one miner's inch of water to each acre of land. The referee, on the hearing on this proceeding, after a view of the lands and streams, and a study of the topographical and climatic conditions, with his expert knowledge as an irrigation engineer and administrator under the water code, fixed the duty of water at one cubic foot per second for each fifty acres of land, or one miner's inch under four inch pressure to each acre that could be beneficially irrigated from the creek. He also recommended that, when the supply of water was insufficient to supply all classes, rights in a higher class should be fully satisfied before water was given to those of a lower class, and, in case of failure of the supply of water to furnish the total amount awarded to a given class, the remaining amount for that class should be apportioned to the appropriators in such class, in proportion which the number of cubic feet awarded to each person bears to the total number of cubic feet per second awarded to such class, subject to *Page 88 
use by rotation. The trial court, upon all the evidence, approved and adopted the duty as established by the supervisor, and we think it should not be disturbed.
Ahtanum creek is twenty miles long, and 119 ditches divert water from it. At various places the creek seems to divide itself into a number of water courses or streams. At one place, what is called the Hughes-Bollman ditch was created apparently by very slight excavation to divert waters from one of the streams of the creek through a somewhat natural hollow, and constructed for a length of nearly eight miles. Apparently, from the evidence, it only required excavation of two feet or so in depth, for about two hundred yards, in order to divert the water from that part of the stream into what was called the Hughes-Bollman ditch, a natural depression being utilized, where it was apparent the water had formerly flowed through this channel during periods of high water. The referee, after an examination of the topography and the entire situation along the creek, found and reported that the Hughes-Bollman ditch had become a part of the water system of Ahtanum creek, and the irrigators along it were riparian owners and users. The adjudications in that locality were therefore made accordingly.
Twenty-five per cent of the water of the streams is owned by the United States, and controlled and administered by the Indian Bureau for the use and benefit of Yakima Indian lands under irrigation, leaving seventy-five per cent of the waters to be adjudicated herein.
At the hearing before the supervisor, as referee, stipulations were entered into by all the parties to the effect that, when it was shown that a water right had been initiated for a given tract of land, diligence had been exercised by the respective claimants and their predecessors in interest in the application of water *Page 89 
under such appropriation, until all land under irrigation upon the tract at the date of the hearing had been irrigated. This stipulation, of course, eliminated the necessity for any proof of diligence in following up the initiation of any water right so as to relate from its date, as for instance, 1853, or 1873, until all lands owned by the claimants capable of irrigation were under irrigation. It was also stipulated that all the lands affected herein are arid and need irrigation, and that the total amount of lands owned by the various claimants might be proven by oral testimony in the absence of contest thereon.
The supervisor, the Honorable Marvin Chase, who conducted the hearing in this matter as referee, a man of very high standing, skill, and ability in this line of work, and with a very broad comprehension of the law as applied in this state under the water code, and under the theories of prior appropriation and riparian rights which exist side by side here, in his report, among other things, said:
"Any attempt to reconcile rights by appropriation with those of riparian owners on a stream is difficult. In this case the rights of some 275 claimants are involved. When we consider the existence of the decree in the Johncox case it is practically impossible to reconcile every class or right with every other class or right, and at the same time formulate a workable schedule of relative rights on the stream. The referee has attempted herein to reconcile all these conflicting rights, and to combine them into a harmonious, enforcible schedule. Where riparian lands are concerned the Referee has recognized the dual system of water rights and has awarded to each claimant the better of the two rights to which he is entitled, as against any and all other claimants. The rights of riparian owners in all cases are measured and limited to the needs of the lands concerned as provided by the Water Code for the purpose of supervision and regulation." *Page 90 
The referee then proceeded to classify the lands according to the initiation of the water rights, and under the stipulation as to diligence, and following up initiation by actual diversion and beneficial use, beginning with the first right initiated susceptible of proof, which was that of one Hague, initiated in 1852. That land was therefore put in class 1. The Roman Catholic Bishop of Nesqually, whose water right was also initiated in 1852, under the appropriation by the Catholic missionaries of water rights from the creek, was also put in class 1. Class 2 included those land owners and claimants whose water rights had been initiated in 1865, and so on down to 1914, when one Wiley, whose water right had been initiated in 1914, was put in class 30.
Upon the hearing in the lower court on the referee's report, and the exceptions thereto, the trial court, in general, adopted the referee's findings and report, except that he added one more class as to the classification of some intermediate water right between 1852 and 1914, the result being that Wiley, whose classification had been 30, was placed in class 31. Other slight modifications were made by the trial court, and some clerical errors in descriptions and names and status of parties corrected, but the findings and recommendations of the referee were, in general, adopted.
The foregoing is a brief preliminary statement of the matter in hand, and other facts will be discussed more specifically in connection with the discussion of the several separate appeals to be considered.
The appeal of the Johncox Ditch Company, a corporation, Hague and wife, Knox and wife, and Shick, a bachelor, were by stipulation and order of the court consolidated, and are joined on this appeal. *Page 91 
The Johncox Ditch Company chiefly complains of the provisions of the decree that it has acquired no rights by adverse use against other claimants on the stream, and also of the reduction in acreage from 965 to 926 acres. Appellants Hague, who were placed in class 11, initiated in 1874, for 141.5 acres of the old Mission lands, purchased by them from the Yakima National Bank, which was reduced by the court to class 22, 1888. The referee also awarded to the Hagues class 26, initiated in 1896, for 25.5 acres of the old Mission lands, which the court reduced to class 27, 1896. They contend that they were entitled to be advanced to class 1, 1852, as having a claim initiated at that time. Appellants Knox and Shick, were given class 9 of the year 1872 for their land, which the court reduced to class 12, of the year 1875. These appellants contend for advancement to class 8, 1871.
Where a very highly qualified expert has been upon the ground, as was the supervisor of hydraulics in this case, and spent much time in determining the classification and rights to be given the respective parties, we, or the trial court, unless qualified equally to dispose of such matters, should be slow to disturb the findings and recommendations of the referee.
On the other hand, where the trial court, as here, is familiar with such controversies, sees and weighs the evidence and determines from law and the evidence that there should be modifications of the referee's report, as was done in this case, we are loath to disturb the findings of the trial court upon such very complicated matters.
[1] The Johncox Ditch Company strenuously contends that it is entitled to a reversal, on the ground that finding No. 3 of the report of the referee, which finding was adopted and approved by the trial court, reading as follows: "That the use of water from *Page 92 
Ahtanum creek by the claimant Johncox Ditch Company, a corporation, has not been continuous and under claim of right as against others for the statutory period," is erroneous. It contends that it is entitled to the right claimed, by appropriation, by adverse user and prescription, and by estoppel.
Many authorities and texts are cited by counsel for the Johncox Ditch Company, to the effect that title to water may be acquired by prescription for the prescribed time under the statute of limitations in force, which in this state is ten years, and that adverse possession may be originated in trespass.
What the Johncox Ditch Company attempts to construe into adverse possession amounts to a flagrant violation of the directions of the decree in the case of Benton v. Johncox,supra. While many of the cases cited by appellant are correct upon the questions involved therein, this case may be decided chiefly by our own cases, without outside authority. In 1896, the rights of the Tampico Canal Company, of Johncox, and of certain associates of his, some of whom are claimants in the present matter, were adjudicated in the case of Benton v. Johncox. They were restrained from diverting any water from Ahtanum creek to non-riparian lands. The decree was affirmed by this court. It isres adjudicata as to them and estops them. It appears that they have, since that decree, been attempting to divert water from Ahtanum creek in violation of the decree. But, under all the evidence in this case, its use of the water of Ahtanum creek has not been continuous for any period of ten years, prior to the beginning of this action. They were prevented from using the water, at times by actual physical interruption, nearly every year from and after 1902, when they were proceeded against in contempt proceedings, until 1921. It itself admits interruptions "by temporary *Page 93 
intrusions," in 1905, 1906, 1911 or 1912, 1915 and 1918 or 1919. At least there was no continuous period from 1896, when the decree in the Johncox case was entered, of ten years' adverse possession of the water, or any of it.
As was said by Judge Hawley, federal district judge in UnionMill Mining Co. v. Dangberg, 81 Fed. 73:
"An adverse use of water for the statutory period must be open, notorious, peaceable, continuous, and under claim or colorof right; [italics ours]; for, if any act is done by other parties claiming the water, that operates as an interruption, however slight, it prevents the acquisition of any adverse right."
Judge Whitson, formerly federal district judge in this state, and a jurist very highly qualified from experience and study to pass upon most questions of irrigation and water law, in a case tried in Montana by him, and reported in Morris v. Bean, 146 Fed. 423, said:
"The statute of limitations is applied by analogy in courts of equity to that relating to the possession of real estate. It never runs upon a scrambling possession. It presupposes adverse, exclusive, and uninterrupted possession under claim of right. The claim must be hostile to that of the person against whom it is asserted."
Then, after stating the facts on which the basis for prescription is attempted in that case, continued:
"As to real estate the possession is easily discovered. It is susceptible of actual proof, but here it is not shown that either the complainant or intervener were ever entirely deprived of water. During the flood time water always reached them. They had the use of it for a time, some years longer than others. Who can divine with definiteness just what amount of water the defendants used to the exclusion of the complainant or intervener, or how long it was used to their exclusion *Page 94 
each year? The burden is upon the defendants to bring themselves within the statute, and the proof must be clear before a prescriptive right will be enforced. The claim cannot prevail under the conditions disclosed."
These observations apply with peculiar force here.
[2] The Johncox Ditch Company also contends that, whatever interruptions occurred to their use of the water during the period of prescription were only slight interruptions, each temporary in its nature. The supreme court of Nevada in Authersv. Bryant, 22 Nev. 242, 38 P. 439, held that the turning of the water from the user's trench on only one occasion, during the period required for prescriptive title to be established, was sufficient to interrupt the continuous adverse possession for the prescriptive period. In that case, Cave v. Crafts, 53 Cal. 135, and Alta Land Water Co. v. Hancock, 85 Cal. 219, were cited and quoted to the effect that the right becomes fixed only after the statutory period of enjoyment; to have been adverse it must have been asserted under claim of title without any acquiescence of the person having a prior right, and must have been uninterrupted. For if there is any act done by other owners that operates as an interruption, however slight, it prevents the acquisition of the right by such use.
But we ourselves have decided this question in a number of cases.
"`To constitute an adverse possession there must be not only an ouster of the real owner, followed by an actual, notorious, and continuous possession on the part of the claimant, during the statutory period, but there must have existed an intention on his part, for a like period, to claim in hostility to the title of the real owner.'" Skansi v. Novak, 84 Wn. 39,146 P. 160. *Page 95 
"Prescriptive rights to water cannot be acquired until the owner of the water has been deprived of its use in such substantial manner and degree as to notify him that his right is being invaded." In re Alpowa Creek, 129 Wn. 9, 224 P. 29.
See, also, Sander v. Bull, 76 Wn. 1, 135 P. 489; Smithv. Nechanicky, 123 Wn. 8, 211 P. 880.
[3] The Johncox Ditch Company also contends that its right to the use of water by estoppel should be established, since it is asserted that the other users from Ahtanum creek stood passively by and permitted it to spend time and money making improvements on land requiring the use of the water, and to divert and use water on their land under the natural and reasonable belief that they had the right to use such water. Authorities are cited to support that proposition.
The fundamental maxims of equity preclude this claim. In the first place, the Johncox Ditch Company could not honestly believe that it had a right to use such water after the decree in theJohncox case, supra. In the second place, the riparian owners and users of the waters along this creek have always objected to the diversion of water of the creek by the non-riparian owners through the Johncox ditch. What have the riparian owners done, that induced the users under the Johncox ditch to make improvements on their lands believing that they had the right to the use of the waters of the creek? This question is also answered by the case of Morris v. Bean, supra, by Judge Whitson.
As to the proposition advanced by the Johncox Ditch Company that there should be a rotation of water provided for by the decree adjudicating its rights, that is something the legislature has not yet authorized, but from the nature of things is a matter that should first be considered and adjusted by the supervisor of hydraulics. While it may be that such *Page 96 
method of distributing water would be the most efficient and economical for the waters of this stream, it was not adopted entirely by the supervisor. We think that neither the trial court nor ourselves should, in the first instance, decree such method of distribution, without much more conclusive and compelling evidence than is in this case.
The Johncox Ditch Company also complains of the reduction of the acreage given it by the trial court, but we think that is a matter that the trial court decided properly under the record.
[4] The Johncox Ditch Company also complains of the duty of water unit established by the supervisor, as referee. It is urged that the Johncox decree in this respect was violated and that all its terms should be held conclusive, or none.
As the supervisor went over the ground and studied the streams, the soil and the climatic conditions he was much more competent and qualified to decide that question than any court.
We think the Johncox decree, in that respect, should not be held conclusive and perpetual. We do not understand that a water duty standard is fixed and immutable. While it must be uniform and apply to all users alike, it may change from time to time, according to water, stream, soil and climatic conditions. A given quantity of water may be sufficient during one series of years, and wholly insufficient during another. In the absence of very conclusive evidence contrary to the supervisor's adjudication, showing arbitrariness on his part, we, as did the trial court, feel bound to follow his findings.
[5] Complaint is also made of the findings of the referee approved and adopted by the trial court, that the Hughes-Bollman ditch had become a part of the natural *Page 97 
stream system of the creek. The evidence, while conflicting, apparently preponderates in favor of this finding. Undoubtedly this finding was made after an examination by the supervisor, on the ground, who found that what had been the Hughes-Bollman ditch had become one of the streams of Ahtanum creek. Since he was on the ground, and made his own personal examination as well as hearing all the evidence, and his finding was adopted and approved by the trial court, we will not disturb it.
[6] Respecting the appeals of both the Hagues, claimants, and the Lynches, claimants, whose lands under irrigation were originally a part of the tract of land claimed by the Catholic missionaries in 1852, and who claimed that their appropriations should date back and relate to the year 1852, it appears that originally the tract claimed by the missionaries contained about 477 acres. The missionaries were entitled to hold such lands as had been occupied by them for a mission, and for cultivation, under an Act of Congress approved March 2, 1853, establishing a territorial government for the Territory of Washington, of an area not exceeding 640 acres, then and theretofore occupied as a Missionary station among the Indian tribes in the Territory of Washington. At the time of the decree in Benton v. Johncox,supra, it was found that the missionaries were occupying 477 acres, a part of which was under contest. Later, it seems, the Mission land was reduced by the Federal government to about forty acres. All the attorneys mention forty acres as the amount of land under irrigation by the Catholic missionaries, although it appears from the patent granted to the Catholic Bishop of Nesqually that the tract granted contained 54.79 acres. *Page 98 
These appellants contend, therefore, that the lands which they acquired through the original patentees of the original tract claimed by the missionaries, but which the missionaries lost, are entitled to the benefit of the appropriation made by the missionaries in 1852 to water from Ahtanum creek.
The Hague tract was successfully contested by one Kinney, who obtained a patent therefor from the United States. The Lynch tract was successfully contested by Timothy Lynch, the ancestor of the present claimants, who received a patent for that tract. The Lynches contend that when their ancestor settled upon the lands acquired by him and took exclusive possession of them in the spring of 1878, while the missionaries were still occupying and claiming the tract, and at the same time took possession of the ditches and the appropriated water and water rights of which he and his successors have held open, notorious and exclusive possession ever since, they are entitled to the water right alleged to have been initiated by the missionaries in 1852.
Whatever right the missionaries may have appropriated and used upon the tract of land occupied by them, they lost when they lost the land. They transferred no land and no water right to anyone. Neither the Lynches nor the Hagues acquired any land or water rights from them. As they in no wise connected themselves with those who first cultivated the land and appropriated the water, the missionaries, their own appropriations, of the year in which they so initiated, must be treated as the inception of their rights. Union Mill Mining Co. v. Dangberg, 81 Fed. 72;Sander v. Bull, 26 Wn. 1.
While it is true, as contended by the Lynches, that it is held by this court, as well as generally, that an appropriator of water need not own any lands in order *Page 99 
to make a valid appropriation, it is equally true that, when an appropriation of water is made which shall become valid by being put to a beneficial use, it is only valid to the extent of the lands which may be acquired and to which the water is beneficially and with reasonable diligence applied. While the missionaries may have intended to use the water appropriated by them on all of the land that might later be acquired by them, and they were entitled to 640 acres, or 477 acres, as it appeared in 1896, nevertheless they never finally acquired more than 54 acres, and, it appears, put under irrigation forty acres. The rest of the land occupied by them went directly from the United States to appellants' ancestor and to the Hagues. There can be no relation of rights between these claimants and the original appropriation by the missionaries.
Appellants Knox and Shick also appealed from the decree which changed their classifications from those made by the referee, claiming that they are entitled to a higher classification. While there is some evidence that might possibly justify their claims of higher classification, since the trial court examined and weighed the evidence, we do not feel justified in disturbing the classifications adopted by it in the decree.
[7] Regarding the appeal of Myrtle L. Marks, individually and as administratrix of the estate of Elmer B. Marks, deceased, whose claim particularly involves the claim of respondent Lowers, who complains of the refusal of the referee in his report, and of the trial court in its decree, to award water for the entire 120 acre tract in the south half of the southwest quarter and the northwest quarter of the southwest quarter of section 10, township 12, north range 17, E.W.M., and to award her the exclusive right to the waters from Bowzer springs, located in the south half of the southeast quarter of section 9, above township *Page 100 
and range, the referee found that Bowzer springs were tributary to and formed a part of Ahtanum creek through a stream called Spring branch. Most of the witnesses referred to the stream from Bowzer springs as the Spring branch, and as tributary to the Ahtanum. There is ample and substantial evidence that W.P. Crosno first appropriated and used the water from Ahtanum creek in 1868, with the conceded intention under the stipulations in this case of irrigating all his land as diligently as possible, and later changed his original point of diversion so as to take the water from the Spring branch, a part of the same water system.
It was very early held in this state that the point of diversion may be changed and not affect the right to the entire appropriation. Offield v. Ish, 21 Wn. 277, 57 P. 809. It is the general rule that a change in the point of diversion may be made and not affect the priority of right nor the quantity of water which the appropriator is entitled to under the extended appropriation. Kinney, Irrigation and Water Rights (2d ed.), p. 857. It is the statutory rule of this state at this time. Chapter 117, Session Laws of 1917, § 39, p. 465.
[8] We have also held that where springs form the fountain head of living water courses they are a part and parcel of the stream. Miller v. Wheeler, 54 Wn. 429, 103 P. 641, 23 L.R.A. (N.S.) 1065; Hollett v. Davis, 54 Wn. 326,103 P. 423.
[9] Appellant Marks contends for the right to the use of the waters of the springs which are situated on the lands of another, by prescription, citing Mason v. Yearwood, 58 Wn. 276,108 P. 608, 30 L.R.A. (N.S.) 1158; Kiser v. Douglas County,70 Wn. 242, 126 P. 622, Ann. Cas. 1914B 721, 41 L.R.A. (N.S.) 1066; Dontanello v. Gust, 86 Wn. 268, 150 P. 420, and Wiel on Water Rights, (3d ed.) p. 622. *Page 101 
In the Mason case, Mason's possession had been exclusive during all the period of the statute of limitations. In theKiser case, the water had been diverted from the lower users and the possession was exclusive. In the Dontanello case, the right to obstruct the lake and use the stream had been exercised for more than the statutory period of limitation without legal or other action to prevent or interrupt.
Other cases adverse to the claim of appellant Marks, are,Skansi v. Novak, 84 Wn. 39, 146 P. 160; Smith v.Nechanicky, 123 Wn. 8, 211 P. 880; In re Alpowa Creek,129 Wn. 9, 224 P. 29.
We conclude, therefore, that the claim of appellant Marks to title to the water claimed by prescription cannot be sustained.
After a careful consideration of all the matters involved in the several appeals before us, and of the law applicable thereto, we conclude that the trial court correctly disposed of the matters, and the decree is affirmed.
TOLMAN, C.J., MAIN, MACKINTOSH, and FULLERTON, JJ., concur. *Page 102