[No. 58857-1. En Banc. May 20, 1993.]

*In the Matter of the Determination of the Rights of the Use of the Surface and Ground Waters of the Marshall Lake and Marshall Creek Drainage Basin in Pend Oreille County, Washington.*

THE DEPARTMENT OF ECOLOGY, *Respondent,* v. CLARENCE E. GRIMES, ET AL, *Appellants,* LEONARD B. MAGART, ET AL, *Respondents.*

*Robert L. Henry,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Thomas Mc-Donald, Assistant,* for respondent State.

*Robert E. Anderson,* for respondents Magart.

*Donald H. Bond* on behalf of Union Gap Irrigation District, Yakima Valley Canal Company, Yakima-Tieton Irrigation District, West Side Irrigating Company, and Ellensburg Water Company; *John P. Gilreath* on behalf of Kittitas Reclamation District; *Thomas A. Cowan* on behalf of Roza Irrigation District; *James E. Davis* on behalf of Cascade Irrigation District; *Charles C. Flower* on behalf of Sunnyside Valley Irrigation District; *Dwight A. Halstead* on behalf of Prosser Irrigation District, City of Prosser, and Kiona Irrigation District; *Floyd E. Ivey* on behalf of Kennewick Irrigation District, City of Yakima, and Naches-Selah Irrigation District, amici curiae for appellants.

SMITH, J. — This matter is before the court upon direct review after we accepted certification from the Court of Appeals, Division Three, pursuant to RCW 2.06.030(d), raising the question of the legal definition of "reasonable use" of water as an element of "beneficial use" under the Water Code of 1917, RCW 90.03, the Water Resources Act of 1971, RCW 90.54, and other related statutes.[1]

Appellants Clarence E. and Peggy V. Grimes (Grimeses) appeal from a decree adjudicating water rights pursuant to RCW 90.03.200 entered by the Pend Oreille County Superior Court. Respondents are Leonard B. and Elsie E. Magart and the State of Washington Department of Ecology (Ecology).[2]

---

[1] Under RAP 4.3, certification by the Court of Appeals transfers the case to this court for disposition.

[2] Defendants Elmer D. Allen, *et ux., et al.,* designated here as respondents, are not before the court at this time, except that Leonard B. and Elsie E. Magart have

We affirm the Superior Court.

In September 1981, the Department of Ecology filed a petition in the Pend Oreille County Superior Court for clarification of existing rights to divert, withdraw, or otherwise make beneficial use of the surface and ground waters of the Marshall Lake and Marshall Creek drainage basin (Marshall Lake basin). Ecology investigated the Marshall Lake basin and the locality served by it and found that the interests of the public and users of the surface and ground waters would be served by an adjudication and determination of the relative rights of all claimants to the use of these waters.[3]

Pursuant to the State Water Code, Donald W. Moos, Director of Ecology, appointed William R. Smith as referee to take testimony and report his recommendations to the Superior Court.[4] The referee subsequently directed Ecology to evaluate and report on all claims filed in connection with the general adjudication.[5]

After Ecology completed and filed with the referee reports of investigations on all claims,[6] the referee held a hearing to take testimony from each claimant.[7] Appellants Clarence E. and Peggy V. Grimes appeared and provided testimony on each of their claims.[8]

The Grimeses submitted five claims for water rights, only the first of which is at issue in this appeal. This claim was for the use of waters for domestic supply, irrigation and

---

filed a brief as respondents. Only Appellants Clarence E. and Peggy V. Grimes seek review before this court.

[3]Supplemental Clerk's Papers vol. 1, at 3-4.

[4]Supplemental Clerk's Papers vol. 1, at 60. *See* RCW 90.03.160; RCW 90.03-.190.

[5]Supplemental Clerk's Papers vol. 2, at 18-19.

[6]Plaintiff's exhibit, at 4.

[7]Supplemental Clerk's Papers vol. 2, at 27-29.

[8]Supplemental Clerk's Papers vol. 2, at 164-213.

recreational purposes. The Grimeses requested an instantaneous flow rate of 3 cubic feet per second (c.f.s.) for irrigation purposes, and a storage right of 1,520 acre feet of water in the Marshall Lake reservoir. The referee recommended that this claim be confirmed, but limited it to an instantaneous flow of 1.5 c.f.s. during irrigation season, and a storage right of 183 acre feet plus 737 acre feet for evaporative loss, for a total storage right of 920 acre feet.

The four additional claims of the Grimeses were for various uses of the water of Marshall Lake. The referee recommended confirmation of the second, fourth and fifth claims,[9] and did not recommend confirmation of the third claim.[10] The determinations on these claims are not at issue here.

Pursuant to the statute, the Grimeses filed exceptions to the report of the referee in the superior court.[11] On May 19, 1988, the Honorable Fred L. Stewart, Pend Oreille County Superior Court, entered an order which denied their exceptions in part, and remanded the matter to the referee to take further evidence on the Grimeses' exceptions relating to (1) the right to store 183 acre feet of water and the period of storage in Marshall Lake; and (2) the establishment of a minimum level of Marshall Lake for measuring waters to be stored under the Grimeses' storage right.[12]

After a hearing on remand, the referee issued a "Report of Referee Pursuant to Order on Exceptions of May 19, 1988."[13] The Grimeses again filed exceptions, objecting to the referee's determination that, in measuring their storage right, the minimum or natural level of Marshall Lake is 2,720 feet above sea level.[14]

---

[9]Clerk's Papers, at 295-96, 297.

[10]Clerk's Papers, at 296, 297-98.

[11]Clerk's Papers, at 317-23.

[12]Clerk's Papers, at 337-39.

[13]Clerk's Papers, at 341-455.

[14]Clerk's Papers, at 456-58.

On January 5, 1990, after hearing testimony on the Grimeses' exceptions, the Superior Court entered its "Decree Adjudicating Water Rights Pursuant to RCW 90.03.200."[15] The decree approved the "Report of Referee", as amended by the "Report of Referee Pursuant to Order on Exceptions of May 19, 1988." Based upon stipulations between the parties, the decree stated that the natural level of Marshall Lake, for the purposes of a measurement of the storage right, is 2,722.62 feet above mean sea level, rather than 2,720 as recommended by the referee.[16]

On February 2, 1990, Clarence E. and Peggy V. Grimes filed a notice of appeal in the Court of Appeals, Division Three.[17] The Coalition of Yakima River Basin Irrigators, a group of 35 Eastern Washington irrigation districts, was authorized to participate as amicus curiae.

On December 26, 1991, the Court of Appeals, Division Three, issued an order of certification which was filed in the Supreme Court on January 14, 1992. In its order of certification, the Court of Appeals stated that "[t]he decision of this [case] is of broad public import as it will impact at least 35 irrigation districts, water companies and municipalities who in turn represent thousands of water users in the Yakima River basin." On January 24, 1992, a ruling accepting certification was issued by this court.

STANDARD OF REVIEW

█ Appellate review of a decree in a general adjudication of water rights is to be made in the same manner as in other cases in equity.[18] Since January 2, 1951, there has been no distinction in this court in the method of review between equity and law cases.[19]

---

[15]Clerk's Papers, at 459-61.

[16]Clerk's Papers, at 459-61. Because of the stipulation, this determination is not in issue.

[17]Clerk's Papers, at 462.

[18]RCW 90.03.200.

[19]*Haire v. Patterson*, 63 Wn.2d 282, 286, 386 P.2d 953 (1963).

■ ■ The appellants challenge the consideration of evidence by the referee and the trial court, as well as application of the law relating to appropriative water rights. This court will defer to findings of fact, as determined by the referee and confirmed by the trial court, if they are supported by substantial evidence.[20] However, the test employed by the referee and confirmed by the trial court in determining beneficial use, including the identity and weight of factors used in the test, is a question of law. Questions of law are reviewed de novo by this court.[21]

### GENERAL ADJUDICATION

■ ■ A general adjudication is a special form of quiet title action to determine all existing rights to the use of water from a specific body of water.[22] In Washington, the adjudication procedure is set forth in RCW 90.03.110 *et seq.* The provisions for adjudication in the Water Code, RCW 90.03-.110-.245, may not be used to lessen, enlarge or modify existing water rights.[23] An adjudication of water rights is only for the purpose of determining and confirming those rights.[24] The surface water rights of the Grimeses in this case are pre-1917 rights, established 11 years before adoption of the Water Code of 1917 and 65 years before adoption of the Water Resources Act of 1971. Subsequent amendments to the 1917 Water Code have clearly stated that nothing in the act "shall affect or operate to impair any existing water rights."[25] To confirm existing rights, the referee must deter-

---

[20] *See Haire*, at 282.

[21] *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983).

[22] *McLeary v. Department of Game*, 91 Wn.2d 647, 591 P.2d 778 (1979).

[23] RCW 90.03.010.

[24] RCW 90.03.245.

[25] RCW 90.54.920; *see* Laws of 1989, ch. 348, § 2 (RCW 90.03.005); *see also* Laws of 1979, 1st Ex. Sess., ch. 216, § 8.

mine two primary elements of a water right: (1) the amount of water that has been put to beneficial use and (2) the priority of water rights relative to each other.[26]

Appellants contend that they or their predecessors in interest have owned and continuously used all waters of Marshall Lake since 1906, and that the State has no authority to limit, control, or regulate their impoundment rights or the quantity of their use of those waters.[27] A general adjudication, however, is intended to determine *all* rights to the use of a body of water, whether riparian or appropriative, and whenever acquired.[28] The State therefore must include the Grimeses' water rights in this adjudication.

## THE DOCTRINE OF PRIOR APPROPRIATION[29]

■ The law of prior appropriation was established in this state by the Territorial Legislature in 1873[30] and recognized by this court in 1897.[31] This court in *Neubert v. Yakima-Tieton Irrig. Dist.*[32] said that "[t]he appropriated water right is perpetual and operates to the exclusion of subsequent claimants." In that case we said appropriative water rights require that:

> Once appropriated, the right to use a given quantity of water becomes appurtenant to the land. The appropriated water right is perpetual and operates to the exclusion of subsequent claimants.

---

[26]*See Department of Ecology v. Acquavella*, 100 Wn.2d 651, 674 P.2d 160 (1983).

[27]Brief of Appellants, at 19-27.

[28]*Department of Ecology v. Abbott*, 103 Wn.2d 686, 692, 694 P.2d 1071 (1985).

[29]The Grimeses argue that they are entitled to their claimed water rights on the basis of their riparian ownership. Each of their original claims, however, was based on appropriation law. Because of this, we need not decide whether riparian rights to Marshall Lake have been eliminated because of its artificial elevation. *See Clippinger v. Birge*, 14 Wn. App. 976, 984, 547 P.2d 871 (1976).

[30]Laws of 1873, p. 520, § 1.

[31]*Benton v. Johncox*, 17 Wash. 277, 49 P. 495 (1897).

[32]117 Wn.2d 232, 237, 814 P.2d 199 (1991).

The key to determining the extent of plaintiffs' vested water rights is the concept of "beneficial use". . . . An appropriated water right is established and maintained by the purposeful application of a given quantity of water to a beneficial use upon the land.[33]

Beneficial use refers to the quantity of water diverted by the appropriator, not to its availability in the source of supply.[34] "The underlying reason for all this constitutional, legislative and judicial emphasis on beneficial use of water lies in the relation of available water resources to the ever-increasing demands made upon them."[35]

■ "Beneficial use" is a term of art in water law, and encompasses two principal elements of a water right.

First, it refers to the purposes, or type of activities, for which water may be used. Use of water for the purposes of irrigated agriculture is a beneficial use.[36] The Grimeses' use of water to irrigate alfalfa fields is not at issue in this case.

Second, beneficial use determines the measure of a water right. The owner of a water right is entitled to the amount of water necessary for the purpose to which it has been put, provided that purpose constitutes a beneficial use.[37] To determine the amount of water necessary for a beneficial use, courts have developed the principle of "reasonable use". Reasonable use of water is determined by analysis of the factors of water duty and waste.[38]

In his findings establishing the measure of the Grimeses' water right, the referee stated that:

[A] valid right for irrigation purposes only exists for the benefit of these claimants and such right is derived from the original

---

[33](Citations omitted.) *Neubert*, at 237.

[34]1 *Waters and Water Rights* § 19.2, at 85 (R. Clark ed. 1967).

[35]*Waters and Water Rights*, at 87.

[36]RCW 90.54.020.

[37]*Waters and Water Rights*, at 86-87.

[38]*United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 854 (9th Cir. 1983).

1906 Linsley notice. It is, therefore, recommended that a right be confirmed to these defendants, with a July 13, 1906 priority for the irrigation of 73 acres from Marshall Lake. Quantification of the amount of water to which this right is entitled creates somewhat of a problem in that there has been no direct testimony regarding the amount of water placed to beneficial use other than a reference in the state's investigatory report that 56 sprinklers are utilized in the system. . . . Therefore, the Referee will allow the standard duty of water which would be 1.2 cubic feet per second plus an additional 25 percent for transportation loss, thus making an aggregate amount of 1.5 cubic feet per second identified with this right. . . .

A second element concerning this right is the amount of storage of water to which these claimants are entitled. . . . [T]hese waters also have recreational benefits, not only to the riparian owners around the lake but also to the general public through the use of resort facilities located on the lake. . . . Therefore, the Referee recommends that a related but separate right be confirmed to these defendants for the storage of 920 acre-feet in Marshall Lake for irrigation and recreation purposes. The priority shall be fixed as of July 13, 1906. The period during which waters may be stored shall be identified as those periods of the year which do not include the April 1 to October 31 irrigation season.[39]

The Grimeses challenge the referee's "consideration of the evidence" and his application of the law in making these findings. We first consider the evidence used by the referee in establishing the factors of water duty and waste. We then consider the test of "reasonable efficiency" employed by the referee, and adopted by the Superior Court, to evaluate these factors.

## WATER DUTY

■ "[Water duty] that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions."[40]

---

[39]Report of Referee; Clerk's Papers, at 293-95.

[40]*In re Steffens*, 756 P.2d 1002, 1005-06 (Colo. 1988) (quoting *Farmers Highline Canal & Reservoir Co. v. Golden*, 129 Colo. 575, 272 P.2d 629 (1954)); *see In re Ahtanum Creek*, 139 Wash. 84, 96, 245 P. 758 (1926).

The referee based his determination of the volume of water necessary for irrigation in the Marshall Lake basin on a Washington State University Research Bulletin entitled "Irrigation Requirements for Washington — Estimates and Methodology" (Irrigation Report), and on the expert testimony of Jim Lyerla, the District Supervisor for seven Eastern Washington counties, including Pend Oreille County, in the Water Resources Program of the Department of Ecology. Mr. Lyerla testified that as a part of his work in assigning water quantities to new water permittees, he relied on the Irrigation Report to determine the "water duty" for a proposed use of water. The Irrigation Report provides information for water requirements for specific crops, given in inches per acre per irrigation season, in 40 locations around the state, including Newport, Washington, 5 miles south of Marshall Lake.

Based on the testimony of Mr. Lyerla and the Irrigation Report, the referee determined that an irrigated alfalfa crop grown in the Marshall Lake area requires 21 inches or 1.75 acre feet of water per acre during the irrigation season. The referee then applied an efficiency factor and increased this water duty to 2.5 acre feet per acre per year. The referee found this water duty to be "approximately commensurate with the duty utilized by the Department of Ecology in its quantity allocations in this geographic area under the water right permit system."[41]

Because water rights are characterized in both total yearly allowance and instantaneous flow, the referee also established the maximum rate of diversion at 0.0166 c.f.s. per acre under irrigation. The referee first calculated a standard flow of 1 c.f.s. of water per 60 acres as a reasonable instantaneous flow for alfalfa irrigation in the Marshall Lake basin.[42] In considering the Grimeses' claim, he determined that the Grimeses were entitled to sufficient flow to irrigate 73 acres, or a minimum of 1.21 c.f.s. He then calculated in an efficiency

---

[41]Report of Referee; Clerk's Papers, at 275.

[42]The record does not indicate the foundation for this calculation.

factor to increase this flow by 25 percent and awarded the Grimeses an instantaneous flow of 1.5 c.f.s.

The referee observed that a larger water duty could be awarded to any claimant with specific information proving a right to a larger amount. The 2.5 acre feet/0.0166 c.f.s. water duty was applied when "quantitative evidence of the rate and volume of a right was neither submitted nor made clear during testimony."[43] The referee also observed that "the use of water under all irrigation rights is, however, limited to the amount of water that can be beneficially applied to that number of acres identified in the water right."[44] The referee did not indiscriminately award this water duty to any claim for an irrigation right, but required claimants to prove the number of acres historically irrigated.

In water rights adjudications, the establishment of a water duty must not be disturbed in "the absence of very conclusive evidence contrary to the . . . adjudication, showing arbitrariness on [the] part [of the adjudicator] . . .."[45] The referee's determination of a generic water duty for irrigation of alfalfa in the Marshall Lake basin is supported by a preponderance of the evidence and will not be disturbed by this court.[46]

## WASTE

From an early date, courts announced the rule that no appropriation of water was valid where the water simply went to waste. Those courts held that the appropriator who diverted more than was needed for the appropriator's actual requirements and allowed the excess to go to waste acquired no right to the excess.[47] A particular use must not only be of

---

[43]Report of Referee; Clerk's Papers, at 275.

[44]Report of Referee; Clerk's Papers, at 274.

[45]*In re Ahtanum Creek*, 139 Wash. 84, 96, 245 P. 758 (1926).

[46]*In re Ahtanum Creek*, at 97.

[47]*Budd v. Bishop*, 543 P.2d 368, 373 (Wyo. 1975); *State ex rel. Erickson v. McLean*, 62 N.M. 264, 270, 308 P.2d 983, 987 (1957); *Thorp v. McBride*, 75 Wash.

benefit to the appropriator, but it must also be a reasonable and economical use of the water in view of other present and future demands upon the source of supply.[48] The difference between absolute waste and economical use has been said to be one of degree only.[49]

Appellant Clarence E. Grimes acknowledged in his testimony that his existing irrigation system required a water flow of up to 3 cubic feet per second in order to deliver 1 cubic foot per second to the field,[50] and that this system was highly inefficient, causing one-half to two-thirds loss of water.[51] Mr. Grimes also testified that uncertainties and ongoing litigation concerning the stability and safety of the irrigation dam had prevented continuous irrigation of his alfalfa acreage.[52] Other claimants testified concerning their use of the water claimed.[53]

While an appropriator's use of water must be reasonably efficient, absolute efficiency is not required.[54] The referee determined that, pursuant to RCW 90.14.160, the uncertainties concerning the irrigation dam constituted sufficient cause not to find a complete abandonment of the Grimeses' water right. He resolved the conflicting testimony by limiting the irrigable acreage to the 73 acres recommended by Ecology. Relying on a standard efficiency factor for irrigation

---

466, 135 P. 228 (1913). *See also* Trelease, *The Concept of Reasonable Beneficial Use in the Law of Surface Streams,* 12 Wyo. L.J. 1, 16 (1957) (citing *Power v. Switzer,* 21 Mont. 523, 55 P. 32 (1898)).

[48]12 Wyo. L.J. at 16.

[49]*In re Water Rights of Deschutes River,* 134 Or. 623, 286 P. 563, 294 P. 1049 (1930).

[50]Clerk's Papers, at 208, 234.

[51]Clerk's Papers, at 108, 208.

[52]Clerk's Papers, at 221.

[53]Clerk's Papers, at 167-200.

[54]*Waters and Water Rights,* at 87 (citing *Allen v. Petrick,* 69 Mont. 373, 376, 380, 222 P. 451 (1924)).

sprinkler systems found in the Irrigation Report, he confirmed in the Grimeses a water right with one-fourth conveyance loss for a total of 1.5 cubic feet per second.[55] There was at least sufficient evidence for the referee to determine the maximum acreage to which the Grimeses' water right applied, and in limiting the allowable loss for system inefficiency in establishing their instantaneous flow.

## THE REASONABLE EFFICIENCY TEST

In limiting the Grimeses' vested water right, the referee balanced several factors, including the water duty for the geographical area and crop under irrigation, the claimants' actual diversion, and sound irrigation practices. In his report, the referee described his method of calculating the Grimeses' water right as a "reasonable efficiency" test.[56]

Amici curiae argue that this test is contrary to judicial decisions which have recognized that the standard of reasonable beneficial use of water for irrigation is limited to consideration of the use of the established means of diversion and application according to the reasonable custom of the locality.[57] Respondent Ecology argues that the 3-part "reasonable efficiency" test cited by the referee provides "the balance sought by the courts between the competing needs of efficiency and maximum utilization of the water, and the existing physical and economic limitations in each situation."[58] Ecology asserts that local custom in irrigation practices is but one of several factors the court must consider in deciding whether a given use of water is reasonable, and, therefore, beneficial.

While the referee stated that he relied on this test, and while he did in fact consider some of its elements, he did not actually utilize the test in its entirety. Therefore, we will

---

[55]Clerk's Papers, at 102.

[56]Report of Referee Pursuant to Order on Exceptions of May 19, 1988, n.1; Clerk's Papers, at 343.

[57]Brief of Amici Curiae, at 2.

[58]Brief of Respondent, at 21.

review the factors he did consider to determine whether his analysis remained within the boundaries of prior appropriation law. In his discussion of the basis for his recommendation concerning the Grimeses' claim, the referee stated that he would "balance [the water duty] against not only the actual amount of water diverted from the lake for irrigation purposes but also against the concepts of beneficial use of water and sound irrigation practices."[59]

Amici curiae urge this court to hold that only "the established means of diversion and application according to the reasonable custom of the locality" may be considered in defining reasonable use.[60] This argument is based on the eminent domain provision of the State Water Code, which prohibits condemnation of a water right when the owner of that right is using the water:

> for the irrigation of his land then under irrigation to the full extent of the soil, by the most economical method of artificial irrigation applicable to such land according to the usual methods of artificial irrigation employed in the vicinity where such land is situated. In any case, the court shall determine what is the most economical method of irrigation.[61]

■ This court has consistently held that rights of users of water for irrigation purposes are vested rights in real property.[62] Amici curiae assert that the "local custom" test has been employed historically to determine whether given applications of water are wasteful, within the meaning of beneficial use, and that courts should now apply it in the setting of general adjudications. This is the established law in this state.[63]

---

[59]Report of Referee; Clerk's Papers, at 294.

[60]Brief of Amici Curiae, at 2-3.

[61]RCW 90.03.040.

[62]*Neubert v. Yakima-Tieton Irrig. Dist., supra* at 236-37; *Foster v. Sunnyside Vly. Irrig. Dist.*, 102 Wn.2d 395, 400, 687 P.2d 841 (1984); *Department of Ecology v. Acquavella, supra* at 656.

[63]*Department of Ecology v. Acquavella, supra* at 656.

Decisions of courts throughout the western states provide a basis for defining "reasonable efficiency" with respect to irrigation practices.[64] While customary irrigation practices common to the locality are a factor for consideration, they do not justify waste of water.[65] As this court stated in a case predating the Water Code of 1917:

> [W]hen rights in such an important element as water is in the arid regions are to be measured by the courts, we cannot lay down a rule that would give to the user an arbitrary right to use water at will. [An irrigator's] rights are to be measured by his necessities . . . and not by any fanciful notion of his own. . . .
>
>   . . . .
>   . . . [C]ustom can fix the manner of use of water for irrigation only when it is founded on necessity . . . [and] an irrigator is entitled to use only so much as he can put to a beneficial use, for the public policy of the people of the United States will not tolerate waste of water in the arid regions.[66]

Local custom and the relative efficiency of irrigation systems in common use are important elements, but must be considered in connection with other statutorily mandated factors, such as the costs and benefits of improvements to irrigation systems, including the use of public and private funds to facilitate improvements.[67]

In limiting the Grimeses' water use by a requirement of reasonable efficiency, the referee properly considered the Irrigation Report, the Grimeses' actual water use, and their existing irrigation system. The referee alluded to a test incorporating factors that consider impacts to the water source and its flora and fauna.[68] While consideration of these impacts is consonant with the State's obligations under RCW

---

[64]*Tulare Irrig. Dist. v. Lindsay-Strathmore Irrig. Dist.*, 3 Cal. 2d 489, 546-47, 45 P.2d 972, 997 (1935); *Hardy v. Beaver Cy. Irr. Co.*, 65 Utah 28, 40-41, 234 P. 524, 529 (1924).

[65]*Tulare*, at 546-47.

[66]*Shafford v. White Bluffs Land & Irrig. Co.*, 63 Wash. 10, 13-16, 114 P. 883 (1911).

[67]RCW 90.03.005.

[68]Report of Referee; Clerk's Papers, at 254.

90.03.005 and 90.54.010(1)(a) and (2), these factors cannot operate to impair existing water rights. Other laws may, however, operate to define existing rights in light of environmental values.[69]

There is some confusion in the record as to the legal standard used by the referee in determining beneficial use. In his original report, the referee discussed determination of water duty. His proposed volume and rates of water were based upon exhibit 5 and expert testimony, when quantitative evidence of the rate and volume of a right was neither submitted nor made clear during testimony.[70] There is no discussion in the original report of any "reasonable efficiency" test.

However, the referee rendered a supplemental report in response to exceptions taken by the Grimeses. In it he considered a storage right and made it clear that that right should not be confused with the diversion right of 1.5 c.f.s. But in a footnote the referee set forth a detailed "test of reasonable efficiency" which he purportedly used in determining beneficial use. That "test" is stated as follows:

(1) [C]ustomary delivery and application practices in the area, (2) technology and "practices" improvements feasible and available to reduce water consumptions and financial needs associated with implementation thereof, and (3) impacts of improvements of existing facilities and practices, if initiated, upon (a) the water source from which the diversion takes place, (b) the existing flora and fauna within the area of diversion, conveyancy and actual uses, (c) other water rights from said water source, and (d) other water users on other water sources.[71]

There is nothing in the record to support the referee's statement that he employed the reasonable efficiency test. Nowhere in the record does he discuss application of the elements of the so-called "test". If he had in fact applied the "test", it would be necessary for this court to reverse and remand. That test is without statutory authorization in an

[69]*See* RCW 90.03.005; RCW 90.03.010.

[70]Clerk's Papers, at 275.

[71]Clerk's Papers, at 343 n.1.

adjudication proceeding which relates exclusively to confirmation of water rights established or created under "other provisions of state law or under federal laws."[72]

Adjudication proceedings cannot be used "to lessen, enlarge, or modify the existing rights of any riparian owner, or any existing right acquired by appropriation, or otherwise."[73] The suggested test would be contrary to the vested rights of water users. "It has long been settled in this state that property owners have a vested interest in their water rights to the extent that the water is beneficially used on the land."[74] Included in the vested rights is the right to diversion, delivery and application "according to the usual methods of artificial irrigation employed in the vicinity where such land is situated."[75] The Legislature sets a standard clearly contradictory to the suggested test in RCW 90.03.040, which relates to eminent domain over water rights. The test is contrary also to long established principles of Western water law.[76]

While we reject use of the specific test suggested by the referee, we affirm because (1) there is no indication in the record that he in fact applied the factors stated in the "test", and (2) he applied the actual beneficial use made by Grimes, taking into account the actual needs and use and the methods of delivery and application in the vicinity. The adjudication and confirmation of a water right in an amount less than claimed by Grimes does not result from application of the so-called test. Rather, as the referee makes clear:

> Quantification of the amount of water to which this right is entitled creates somewhat of a problem in that there has been no direct testimony regarding the amount of water placed to

---

[72]RCW 90.03.245.

[73]RCW 90.03.010.

[74]*Department of Ecology v. Acquavella*, 100 Wn.2d 651, 655, 674 P.2d 160 (1983).

[75]RCW 90.03.040.

[76]*Tulare Irrig. Dist. v. Lindsay-Strathmore Irrig. Dist.*, 3 Cal. 2d 489, 45 P.2d 972 (1935); *State ex rel. Crowley v. District Court*, 108 Mont. 89, 88 P.2d 23 (1939); *Hardy v. Beaver Cy. Irr. Co.*, 65 Utah 28, 234 P. 524 (1924).

beneficial use other than a reference in the state's investigatory report that 56 sprinklers are utilized in the system.[77]

In the absence of such proof, the referee nevertheless confirmed the right by using a normal duty of water for the type of crops raised and specifically added 25 percent for transportation loss. Making the best of inadequate proof by the claimant, it appears from the record that the referee applied the usual methods of irrigation employed in the vicinity where the Grimeses' land is located.

## THE TAKINGS ARGUMENT

Appellants Grimes argue that diminishment of their prior appropriation in any way is a "taking" of their property right for which they must be compensated or have the decision of the trial court set aside.[78] A vested water right is a type of private property that is subject to the Fifth Amendment prohibition on takings without just compensation.[79] Nevertheless, the concept of "beneficial use", as developed in the common law and as described earlier in this opinion, operates as a permissible limitation on water rights.[80]

RCW 90.14.160 provides for relinquishment of unused water rights. The statute provides that:

> Any person entitled to divert or withdraw waters of the state through any appropriation authorized by enactments of the legislature prior to enactment of chapter 117, Laws of 1917, or by custom, or by general adjudication, who abandons the same, or who voluntarily fails, without sufficient cause, to beneficially use all or any part of said right to divert or withdraw for any period of five successive years after the effective date of this act, shall relinquish such right or portion thereof, and said right or portion thereof shall revert to the state, and the waters affected by said right shall become available for appropriation in accordance with RCW 90.03.250.[81]

---

[77]Clerk's Papers, at 293.

[78]Brief of Appellants, at 28.

[79]*Department of Ecology v. Adsit*, 103 Wn.2d 698, 705, 694 P.2d 1065 (1985).

[80]*Budd v. Bishop*, 543 P.2d 368, 373 (Wyo. 1975).

[81]RCW 90.03.250 prescribes the procedure for water appropriation applications.

Pursuant to RCW 90.14.160, Appellants Grimes were entitled to "divert or withdraw" the subject water. However, the referee's finding, which we will not disturb, that their voluntary failure, "without sufficient cause", to beneficially use all of the waters diverted requires that those waters "revert to the state . . . and . . . become available for appropriation". The Grimeses' claim that their water right has been partially "taken" without just compensation necessarily fails.

CONCLUSION

Although we agree with the conclusion reached by the referee in this case, we expressly reject the test he purportedly used.

Applying the concepts of "beneficial use" to water rights in this state, we rule on the merits and affirm the decision of the Pend Oreille County Superior Court, dated January 5, 1990, which substantially approved the conclusion of the referee relating to the water rights of Appellants Clarence E. and Peggy V. Grimes.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.